SCHLIESS *v.* CITY OF GRAND RAPIDS.

1. BUILDING CONTRACTS—LIABILITY OF CONTRACTOR—DAMAGE BY FROST.

    A contractor who builds a stone wall in accordance with plans and specifications furnished by the owner, performing the work at the time and protecting it in the manner directed by the latter, is not responsible for the condition of the wall caused by freezing; he not being an insurer of his work.

2. SAME—RIGHT TO REJECT WORK.

    A provision in a contract for the erection of a wall according to plans and specifications, giving the owner the right to determine all questions as to performance, does not entitle him arbitrarily to reject the work, but, if there has been a substantial performance, the contractor may recover the agreed price.

3. SAME—MUNICIPAL CORPORATIONS—ESTOPPEL.

    Where a city's architect and inspector, charged with the duty of seeing that a wall is properly built, are present during the entire progress of the work, and see the manner in which the contractor is performing it, without objecting thereto, and the board of public works acts weekly upon the reports made by such representatives, paying the amount of the estimates, the city is estopped to set up an improper performance of the contract.

Error to superior court of Grand Rapids; Newnham, J. Submitted April 25, 1902. (Docket No. 89.) Decided June 3, 1902.

*Assumpsit* by Henry Schliess against the city of Grand Rapids to recover a balance due on a building contract. From a judgment for plaintiff, defendant brings error. Affirmed.

In November, 1898, plaintiff made a contract with the defendant city to build the foundation walls for a municipal electric-lighting plant. By the charter of the city (title 9, §§ 13, 14, 30) the board of public works is intrusted

with the control of the erection and construction of such buildings. The board is also authorized to determine and designate the kind and quality of material to be used. When it has so determined, it is required to make an estimate of the probable cost, and report the same to the common council. If approved, a contract is then made, signed by the mayor and the president of the board of public works. The contract was made November 12th, and the work was to be done within 60 days. Those portions of the contract which counsel deemed material are as follows:

"Build the foundation walls (colored blue on plans and sections) up to grade line of thickness shown, of native field boulders, to be selected, large size, first quality stone, not less than 12 inches in thickness by 15 inches in length, laid to line on both sides, well bonded and fitted together."

"No part of this contract will be accepted unless it complies fully with these specifications in the fullest sense of its terms."

"The contractor shall (if so directed by the architect) furnish horse manure, and cover all newly built stonework during cold weather, to prevent its being injured by freezing."

"The contractor agrees that the materials to be used and the work to be performed shall at all times be subject to the inspection and approval of the board of public works, or authorized agent of said city, and, in case any material is rejected, it shall be immediately removed from the premises, and not again brought thereon."

"The contractor agrees that he will at all times give his personal attention to the work, and that he will employ none but competent workmen on the work covered by this contract.

"The contractor agrees that the board of public works of said city shall determine finally all questions as to the proper performance of this contract, and that the said board may declare this contract forfeited at any time for the nonperformance of any part thereof, and may proceed to complete the same without delay. * * * It is further understood that the liability of the contractor under this contract shall in no way be lessened by reason of the board availing itself of the provision herein contained.

"The contractor agrees to commence said work within ten days after signing this contract, and to prosecute the same with all due diligence, and finish the same in sixty working days, for the sum of six thousand eight hundred and sixty-five dollars, the amount named in his proposal for the work, now on file in the office of said board; and that, for each and every day that elapses beyond the number of working days mentioned in said proposal for the completion of this contract, the said board may deduct from any money due the contractor the sum of ten dollars, in addition to the *per diem* of the inspectors employed on the work."

"It is mutually agreed between the parties that no deviation from the contract can be authorized by any inspector of the work, and that the city is in no way bound to accept work not in accordance with the specifications, although such work may not have been objected to by the inspector.

"The city hereby agrees to pay the sum aforesaid in article 6 under the restrictions and limitations herein contained, and to make payments from time to time in the manner indicated in article 7, on account of the performance of this contract, upon estimates of the amount of work actually performed and materials actually used thereon.  The amount so paid shall be such as the board of public works find to be just.  Fifteen per cent. of such estimates may be retained until the acceptance of the work; and it is agreed that no part of the retained percentage shall be paid to the contractor before the final acceptance of the work, except upon the written consent of the bondsmen.

"It is mutually understood that the intent of the contract is to secure first-class construction, workmanship, and materials, and the contractor hereby agrees to furnish the same, and be governed in all things by the regulations herein contained, whether specifically expressed or implied, and by instructions given by the board of public works, not inconsistent with this contract.

"The contractor agrees that his responsibility shall in no way be lessened by reason of either party hereto availing itself of any provisions herein contained."

The work was begun November 16th, and was continued until January 18th, when the architect ordered the work stopped on account of the severe cold weather.

About five-sixths of the work at this time was completed. The wall appears to have been built in sections, and the larger part of it was completed to the top. Work was resumed by order of the architect February 22d. The weather became too cold, and, under orders of the architect, work was again suspended until March 17th. On that day the board served a notice upon the plaintiff and his sureties to complete the job within 10 days thereafter. He at once resumed work, and the job was nearly completed by the 5th of April. Soon after this it was discovered that the mortar was killed by freezing, and it became necessary to take down and rebuild a portion of the wall. A dispute arose between the parties as to the responsibility for the condition of the walls. Plaintiff claimed that he had complied with the conditions of his contract; that the work was done under the direction of the architect and inspector, as well as members of the board of public works; that weekly estimates had been made by the architect and inspector, and approved by the board, and payments made in accordance with the terms of the contract. Defendant claimed that the plaintiff had not complied with the terms of his contract; that the mortar was not as provided; that some smaller stones were used than the contract provided; and that manure was not used, as required, for the protection of the walls. Plaintiff made a proposition to rebuild the unsafe parts of the walls at a given price. This was accepted by a unanimous vote of the board. At a subsequent meeting this resolution of acceptance was rescinded, and the board declared the contract forfeited, and proceeded to rebuild. Plaintiff brought this suit to recover the amount due him under the contract, claiming performance on his part.

Counsel for the plaintiff are not satisfied with the statement of facts made in appellant's brief, and say that it "is so insufficient and inaccurate as to justify a restatement." This involves the examination by this court of a long record to determine and make a statement of facts. This requires labor which ought not to be imposed upon

us. The material facts, so far as the questions before us are involved, are not in dispute, and appear in the following instructions of the court:

"It is undisputed that the plaintiff began the performance of his contract within the time required thereby; that on or about December 16th the board of public works ordered the plaintiff to proceed more rapidly with the work, and notified him that it must be completed within the time provided by the contract. It is undisputed that from the time of said notice plaintiff proceeded with the contract, and continued in its performance until about January 18th, when he was stopped by orders from the architect, on the ground that the weather was too cold to lay stone. It is likewise undisputed that, at the time the plaintiff was stopped by the architect, about five-sixths of the wall had been laid up. It is likewise undisputed that, from about the 18th day of January until at least the 23d of February, the weather was so unusually and exceedingly cold that the freezing of the earth, water-pipes, and so forth was greater than for many previous years. It is also undisputed that the weather from January 18th to February 23d, and some of the weather after the latter date, was so cold as to kill cement mortar laid up in walls above the ground which had not yet dried out. It is also undisputed that, from the time the plaintiff began work in November until he was stopped in January, the weather was too cold to permit the drying out of the mortar. It is undisputed that in April it was found that all mortar laid above the level of the ground before January 18th, and some laid after March 17th, was frozen and killed. It is likewise undisputed that about March 15th the board of public works ordered the plaintiff to complete the construction of the work within 10 days; that said plaintiff did proceed under such order, and completed said work, aside from pointing and plastering the walls, and a small part of the coffer dam and the intake pipe. It is likewise undisputed that, for a portion of the time during which work was done after March 16th, the weather was too cold to allow the mortar to dry, and part of the time cold enough to kill mortar above ground. It is likewise undisputed that the contractor provided horse manure for the covering of the top of the wall. There is no evidence tending to show that this horse manure was not used in the customary manner.

"The plaintiff claims that he laid stone, after the cold weather came on, only as directed by the architect through the inspector. The contract does not require the contractor to protect the wall in any way, except that it provides that he shall use manure to cover newly built wall when directed by the architect. If you find that the plaintiff used manure for the protection of the wall in the manner and to the extent ordered by the architect, the plaintiff performed his full duty in that regard. If you find that the inspector and the architect knew the extent to which manure was being used by the plaintiff, and made no objection to such use, and no demand for other or different use, the responsibility for failure to use greater protection must fall on the city, and not on the plaintiff. In no event can the plaintiff be held liable for the killing of the mortar, except such killing as occurred through his own fault in violation of the contract and specifications. If you find that the plaintiff laid stone in cold weather only as directed, and the wall was destroyed by the freezing of the mortar, the loss must fall upon the city, and the plaintiff cannot be held responsible.

"It does not follow, however, that if plaintiff laid stone without the direction of the architect or the inspector that he must bear the loss thereof. The specifications forbade the laying of the walls only in extremely cold weather unless by permission of the architect. It will be seen that this extremely cold weather is indefinite. It must be left to the judgment of some one to determine what weather is extremely cold. By the contract and specifications in question, the architect, acting either personally or through the inspector under directions from the architect, was to determine what weather was extremely cold. It is undisputed that the architect personally visited the work from one to four times a week during the work, and, during the week ending December 16th, visited the work four times; that the president of the board of public works visited the work frequently. It is undisputed that neither the architect nor the president of the board of public works objected to laying stone until about January 18th, when the architect directed temporary suspension of the work. The contract does not forbid the contractor to lay stone in extremely cold weather. It provides only that he must not do so without permission of the architect. In order to constitute permission by the architect to lay stone in extremely cold weather, it is not necessary that the

architect should have expressly in words directed or consented to it. If, with notice or knowledge that the stone was being laid, the architect did not object to it, he thereby permitted it, in the meaning of the specifications, and the responsibility must fall on the city, and not on the contractor. The board of public works had the same right as the architect to permit the laying of stone in extremely cold weather, and if you find that the board was urging plaintiff to proceed with his work in spite of cold weather, and insisting that he must finish within the 60-day limit, and that the board, through the inspection of its president or otherwise, knew that the stone was being laid in extremely cold weather, and did not forbid it, such acts, taken together, amounted to a permission to the laying of such stone by the plaintiff, and the responsibility therefor must fall on the city, and not upon the contractor.

"It was the duty of the inspector to carefully observe all details of the work, and to examine carefully all materials that were proposed to be used in the work, and to immediately object to such as did not conform to the contract and specifications, and to promptly notify the contractor of any deviations made by him from the requirements of the contract and the specifications. Under the power given the board by the contract to order the stopping of the work, and the power given the board by the contract to complete the same itself if the contractor was dilatory, when the board permitted the contractor to proceed without objection, having knowledge of the manner of doing the work, and the means taken to protect the work, they and the city in so doing approved from day to day everything that was done, with the knowledge of the inspector and their architect, and approved of everything of which their architect and inspector had notice. The mere fact that smaller stones were used than the specifications called for did not amount to a violation of the contract, if the use of stone that were used amounted to a substantial performance of the contract. It is undisputed that the inspector from week to week reported to the board of public works the amount of work done during the preceding week. It is also undisputed that the architect reported from time to time to the board of public works the progress made with the contract. It is also undisputed that both the inspector and the architect were satisfied with the performance of the work by the plaintiff as a substantial and satisfactory performance of the contract and specifications, and that such approval and satisfaction of the in-

spector and architect continued up to the time of the destruction of the wall by the subsequent action of the board of public works. It is further undisputed that the board of public works never questioned the propriety of the method of construction of said wall until after examination and with reference to the killing of the mortar. While the city is not barred from complaining of the existing substantial defects in the wall by the opinion of the inspector, it does not follow that such defects give right to the city to forfeit the contract and condemn the entire work.

"Substantial performance of the contract is all that was required to enable the plaintiff to recover. The contract must be construed altogether. If the walls could not be properly built without using smaller stone in order to properly bond the same, then there would be a substantial compliance of the contract if smaller stone were used, provided that the plaintiff did the same in good faith, and without fraud upon his part. If, however, gentlemen of the jury, you should find that the plaintiff, in putting smaller stone into the wall, acted in bad faith, and, as a consequence thereof, the wall was not substantially built as required by the contract, and had to be taken down in order that one should be rebuilt that would substantially comply with the terms of the contract, then I charge you that the plaintiff would be responsible, and the city would be entitled to recover back from him the amount which they so paid out for reconstructing the said wall."

The plaintiff had a verdict and judgment.

*Lant K. Salsbury* and *Moses Taggart* (*Taggart & Taggart*, of counsel), for appellant.

*Knappen, Kleinhans & Knappen*, for appellee.

Grant, J. (*after stating the facts*). The jury, by their verdict, have settled the questions of fact submitted to them in favor of the plaintiff. These were:

1. Did the plaintiff proceed in the erection of the wall without the permission of the architect, defendant's authorized agent?

2. Did he protect the wall in the usual manner by the use of manure, and as directed by the architect?

3. Was the wall properly bonded, and was the use of some stones smaller than those mentioned in the contract a violation of it?

4. Was the trouble with the wall caused by extreme cold weather, which froze and killed the mortar?

5. Was the mortar made as required by the contract?

6. Had plaintiff substantially performed the contract?

Upon these questions there was a conflict of evidence.

Plaintiff was not an insurer of the success of the work. He agreed to perform it in accordance with certain plans and specifications. If he made the mortar as provided by the contract, and protected it as he agreed, and performed the work as he was directed or permitted to do by defendant's proper authorities, he is not responsible for the condition of the wall caused by freezing. He did not guarantee that the wall should stand the weather. That risk was assumed by the defendant. A similar question arose in *Filbert* v. *City of Philadelphia*, 181 Pa. St. 530 (37 Atl. 545); *Harlow* v. *Borough of Homestead*, 194 Pa. St. 57 (45 Atl. 87). These cases fully support the instructions of the court.

Counsel for defendant insist that the work was not done to the satisfaction of the board of public works; that that body was the final arbiter upon the question, and its judgment should be conclusive. Counsel, however, upon the argument, conceded that the defendant could not arbitrarily determine that the wall was not satisfactory, that plaintiff had not complied with the contract, and refuse payment. This concession leaves open the question for a court or a jury whether such determination is arbitrary, and this, as a matter of course, involves the question whether the plaintiff had substantially fulfilled his contract. Under this concession it would seem almost idle to examine the authorities. The defendant's counsel, notwithstanding this concession, seek to bring the case within the following decisions of this court: *Gibson* v. *Cranage*, 39 Mich. 49 (33 Am. Rep. 351); *Walter A. Wood Machine Co.* v. *Smith*, 50 Mich. 565 (15 N. W. 906, 45 Am. Rep. 57); *Plano Manfg. Co.* v. *Ellis*, 68 Mich. 101 (35

N. W. 841); *Platt* v. *Broderick,* 70 Mich. 577 (38 N. W. 579); *United States Electric Fire-Alarm Co.* v. *City of Big Rapids,* 78 Mich. 67 (43 N. W. 1030); *Pierce* v. *Cooley,* 56 Mich. 552 (23 N. W. 310); *Koehler* v. *Buhl,* 94 Mich. 496 (54 N. W. 157); *Housding* v. *Solomon,* 127 Mich. 654 (87 N. W. 57).

Those cases do not control contracts of this character. In *Gibson* v. *Cranage* the agreement was for the painting of a portrait, which should be perfectly satisfactory to the person for whom it was painted.   In *Walter A. Wood Machine Co.* v. *Smith* a harvesting machine was delivered under a contract of sale, which provided that the purchaser need not keep it unless it worked to his satisfaction.   The others are similar cases.   In those cases it made no difference what the character of the picture or machine was, or whether the one was properly painted or the other properly constructed.   Those cases involve no work to be performed according to plans and specifications.   In every case but one the vendor retained possession of his property, or it was returned to him when the purchaser had decided that it was not satisfactory.   In *Koehler* v. *Buhl* the contract was one of employment, the services rendered to be to the satisfaction of the employer.   Plaintiff was paid for the full time he worked.   Upon being discharged, he sought to recover for the balance of the term of employment.   It was held that the employer was not bound to give any reasons for discharging him; it was sufficient that the employer was not satisfied.   Contracts of this character are well described in *Walter A. Wood Machine Co.* v. *Smith:*

"The cases of this class are generally such as involve the feelings, taste, or sensibility of the promisor, and not those gross considerations of operative fitness or mechanical utility which are capable of being seen and appreciated by others."

A good illustration of this class of contracts is found in *Richison* v. *Mead,* 11 S. Dak. 639 (80 N. W. 131), where R. agreed to sink a well for M. which would produce a

flow of water satisfactory to M. The court. held (citing many authorities) that the contract was fulfilled by the production of a supply of water reasonable and sufficient for M.'s wants and needs upon his farm.

"It will not do for the defendant to say that he is not satisfied with the flow of water, without showing that the supply of water furnished by this well was insufficient for the uses of his farm."

Furthermore, the conduct of the defendant, through its inspector and architect and board of public works, estops it from now claiming that the contract was not fulfilled. Its authorized agents were there during the entire progress of the work, charged with the duty to see that it was properly done. The city, through its board of public works, acted weekly upon the reports made, and paid the amounts due for the estimates. The law would not permit defendant to see this work go. on, to ratify it day after day and week after week, to see plaintiff putting in stone not in exact accord with the contract, and then say, when the work is done, "You have not complied with the contract." Its time to accept or reject was when the work was being done. It could not lull the plaintiff into the belief that this work was satisfactory, and, when completed, reject it. *Laycock* v. *Moon*, 97 Wis. 59 (72 N. W. 372); *Lauman* v. *Clark*, 73 Ill. App. 659; *Ashland Cement Co.* v. *Shores*, 105 Wis. 122 (81 N. W. 136).

We think the court's instructions are sustained, both by reason and authority. It is unnecessary to discuss the errors assigned upon the refusal to give certain of the defendant's requests. They are antagonistic to the instructions given, and, under our holding, were properly rejected.

We find no error upon the record, and the judgment is affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.