PEOPLE OF PUERTO RICO, Plaintiff Appellant and Appellee, *v.* RAFAEL BERRÍOS ET AL., Defendants Appellees and Appellants.

No. 7532. Argued May 19, 1938.—Decided March 21, 1939.

484

*Benigno Fernández García, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellant. *González Fagundo & González Jr.* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The action filed herein is for damages. The exposition of the case made by the attorneys of either party in the hearing was concise, clear and substantially complete. Said the attorney for plaintiff:

"In this case the People of Puerto Rico, through the Commissioner of the Interior, entered into a contract with Rafael Berríos for the construction of a four room schoolhouse, made of cement, in the ward of Guardarraya, Patillas. That school was constructed and delivered to the Government, and used by it as a school, on or about the year 1926, and when the San Felipe cyclone struck the island... September, 1928, the schoolhouse was destroyed, and this action for damages has been filed on the ground that the immediate cause of said destruction was the defects of construction in the building, although the cyclone was a contributing cause. Because of said destruction the People of Puerto Rico has suffered damages which it has been unable to recover from the defendant, the contractor, and that said contract for the construction of the schoolhouse was also signed by the co-defendant sureties."

And said the attorney for defendants:

"Truly, our contention is, Your Honor, that a contract was entered into between the People of Puerto Rico and Rafael Berríos, and that the sureties to said contract were José L. Berríos and F. M. Colón. That said construction was carried on under the immediate inspection of the Commissioner of the Interior, who had all the time an inspector watching over the construction; that the materials were used with the approval of the inspector and therefore with that of the Commissioner of the Interior, in accordance with

the contract, that building was constructed complying with the terms of that contract. That the final acceptance took place and that in accordance with the contract, and I beg Your Honor's pardon for repeating that so often, the defendant was relieved of all liability, as well as the sureties, for the Commissioner of the Interior cancelled the bond. That if the building fell down, it was by an act of God, a cyclone of unknown intensity in this Island, that a building, even admitting for the sake of argument that it had been constructed according to the specifications, could not have resisted . . . Furthermore, the sureties could never be liable beyond the amount for which they bound themselves in the bond that we will offer in evidence."

Evidence was then introduced by either party and the case was finally decided by the district court in favor of the defendant. The plaintiff appealed. The defendants then filed a motion requesting the court to tax the costs and attorney's fees to the plaintiff. The court overruled the motion and the defendants also appealed from that part of the judgment that does not tax the costs and attorney's fees to the plaintiff.

To sustain the judgment, the trial judge delivered an opinion. We transcribe from it the following:

"After having heard the case and carefully studied all the evidence introduced which includes the testimony of several experts from the Department of the Interior of Puerto Rico, it is held that the allegations of fact of the plaintiff have been duly proved. However, the conclusion is different as the questions of law in issue.

"For the erection of the building in question, the procedure prescribed by law was followed. It was adjudicated in public auction to the bidder found more convenient by the legal representatives of the plaintiff. After all the proceedings for the auction had been completed, the construction of the building was awarded to the contractor who is herein sued as such, whom, before beginning the construction, signed together with the Supervisor of Public Works, the Comissioner of Education and the Commissioner of the Interior, of Puerto Rico, a contract concerning said construction. Simultaneously with that contract a bond was given in favor of the People of Puerto Rico in the amount of $1,630, which bond had the following essential stipulation:

" 'THEREFORE, if said Rafael Berríos should execute and perform all the terms and conditions of said contract, and if he should comply with all the obligations contained in it, and if he should perform all the work and furnish all the materials required, with any and all the changes, additions, or omissions required by said contract or subsequently specified within the term given for the completion of the work or within any extension of time granted for said purpose, it being unnecessary in every case to give notice of extensions of time to the guarantors, and if he should promptly pay the wages of all workmen and the cost of all materials pertaining to the execution of the said contract; in that case the instant obligation shall be discharged; otherwise it shall remain in full force and effect.'

"The contract we have referred to contains a clause that, literally transcribed, reads as follows:

" '6.—That the General Conditions for the Awarding of Contracts of Insular Public Works in force since July, 1902, are applicable to and form part of this contract.'

"Said General Conditions for the Awarding of Contracts of Public Works, that not only have the force of law but are part of the law of said contract, also contain a clause that, literally transcribed, reads as follows:

" 'If the work is found completed in accordance with specifications and so certified to by the engineer apointed for the purpose, the final acceptance of the work will be declared by the Bureau of Public Works, and when the final liquidation shall have been approved by the Commissioner of the Interior the percentages retained shall be paid to the contractor and his bonds cancelled; *his responsibility under the contract having come to an end. Provided, however,* that the contractor shall give account of work done or material furnished, or for damages to landowners during the progress of the work before said percentages can be paid and bonds cancelled.' (Italics ours.)

"The final tender or proposal of 'Instructions, Offer and Contract for Insular Public Works' expressly refers to the clause above stated, thus:

" '*Final Acceptance.*—The final acceptance shall take place upon the expiration of the term of the warranty. An inspection shall be made of all the work by an inspector appointed by the Commissioner of the Interior, and if found to be in good condition and in conformity with all the conditions, stipulations and specifications of the contract, the Commissioner of the Interior shall finally ac-

cept the construction and the contract shall be cancelled in accordance with the provisions of section 41 of the General Conditions for the Awarding of Insular Public Works. In the case that the inspector appointed by the Commissioner of the Interior should not find the work to be in good condition and *in conformity with all the conditions, stipulations and specifications of the contract*, the Commissioner of the Interior shall notify in writing to the contractor or to his representatives, all the alterations and changes to be effected, and a new inspection shall be made after said changes or alterations have been completed, before the final acceptance.'

"In accordance with the contractual provisions binding both parties to this action, in regard with the provisional and final acceptance of the construction object of this case, on April 30, 1926, the Assistant Architect of the Department of the Interior of Puerto Rico addressed a letter to the defendant contractor, which reads as follows:

" 'I take the liberty of informing you that on March 12, 1926, the construction of a cement schoolhouse with 4 rooms in the ward "Guardarraya" of Patillas, contracted by you, has been provisionally accepted.

" 'I enclose herewith for your benefit, copy of certificate No. 5, for $1,198.03, covering 90 per cent of the contract.

" 'I bring to your attention the fact that it can not be finally liquidated unless you send $1.79 in Internal Revenue stamps, as required by the Excise Law and for the photographs.'

"From March 12 to July 15, there elapsed the four months required by the contract for the final acceptance of the work, counting from the date of the original acceptance. And on July 29 of said year, the Commissioner of the Interior of Puerto Rico notified the defendant contractor of the final acceptance of the construction, and ordering payment of the amount still due on it in a letter that, literally transcribed, reads as follows:

" 'Sir: I take the liberty of informing you that on July 15, 1926, the cement schoolhouse with 4 rooms in the ward "Guardarraya" of Patillas, contracted by you, was finally accepted.

" 'I enclose herewith, for your benefit, copy of certificate No. 6, for $832.85, covering the 10 per cent withheld from said contract, and enclose also the corresponding liquidation.'

"And on August 6 of that same year, the Commissioner of the Interior of Puerto Rico addressed the two letters transcribed *infra*, to the guarantors of the defendant contractor—who are themselves defendants—in this case:

" '6–015–1215. August 6, 1926.—Sir: I take the liberty of informing you that on July 15, 1926, the cement schoolhouse with 4 rooms in the ward ''Guardarraya'' of Patillas, contracted by Mr. Rafael Berríos, has been finally accepted.

" 'Therefore, you are relieved from all liability on that contract. Respectfully, Commissioner.—Mr. F. Mariano Colón Berríos, Yabucoa.

" '6–015–1214. Sir: I wish to inform you that on July 15, 1926, the cement schoolhouse with 4 rooms in the ward ''Guardarraya'' of Patillas, contracted by Mr. Rafael Berríos, has been finally accepted.

" 'Therefore, you are relieved from all liability on that contract. Respectfully, Commissioner.—Mr. José L. Berríos Delgado, Yabucoa.'

"Under this state of facts, the contract between both parties was definitely terminated, and all legal relationship between them came to an end.

"It is true that sec. 1494 of the Civil Code in force, 1911 ed., provides that:

" 'The contractor of a building which may have been destroyed by reason of defects in the construction shall be liable for the losses and damages if said building should collapse within ten years, to be counted from the completion of the construction; and during the same time the same liability shall be incurred by the architect who may have directed the work if the collapse is due to defects in the ground or in the direction.

" 'If the cause should be the noncompliance of the contractor with the conditions of the contract, the action for indemnity may be brought within fifteen years.'

"The Civil Code, however, is of a supletory nature and leaves the parties at liberty to provide in their contractual juridical relationships, all those agreements, clauses and conditions that they may deem convenient, with the sole limitation that the same shall not be contrary to the laws nor to the public morals or order.

"There is no doubt whatever that a prescriptive term may be waived, as well as any right of action. In this case the parties agreed expressly and categorically that if after an inspection of the works it were found to be in good condition and in conformity with the specifications of the contract, the Commissioner of the Interior would order the final acceptance thereof in accordance with the provisions of section 41 of the General Conditions for the Awarding of Contracts of Public Works, that provides that after the final acceptance by the Bureau of Public Works, the contractor shall be paid any

balance still owing to him, and all liability on the contract shall cease, and it shall be strictly presumed that all requisites were complied with, undoubtedly, before said payment was made and before the final acceptance of the construction object of this case.

"In view of such a categorical stipulation, it is impossible to arrive at any other conclusion but that at the moment of the final acceptance, all relationship between the parties definitely ended and all liability of the contractor and his guarantors towards plaintiff ceased by reason of said contract.

"The Commissioner of the Interior of Puerto Rico and his subordinates that intervened in this case, were not persons ignorant of the procedure involved in all kinds of constructions. They were competent professionals; the construction was subject to their supervision, and according to the terms of the contract there was continuously in attendance in the construction an inspector representing him, to look after the faithful performance of the contractual obligations assumed by the defendant contractor.

"In spite thereof, however, the conclusion of the court might have been different, by virtue of the findings of fact, had section 41 of the General Conditions for the Awarding of Contracts of Public Works in Puerto Rico not existed as part of the contract.

"It is therefore unnecessary to decide the other questions raised in this case, and the court is of the opinion that the complaint should be dismissed . . ."

After having studied the transcript of the evidence and the biefs, we are convinced that the trial judge correctly weighed the evidence and applied the law.

We have examined the cases in point, and they support the opinion of the trial judge. It will suffice to cite the case of *City Street Imp. Co. v. Marysville,* 155 Cal. 419. In that case the Supreme Court of California expressed itself as follows:

"It is earnestly contended that the city is estopped to deny the completion of the work by reason of its failure to object as the work progressed, and by reason of the signing of certificates by the engineer from month to month and upon the supposed completion of the work, evidencing his approval thereof. Contracts of the kind here considered are not new to the law. The stipulation in such contracts that the engineers' estimate should be final has been held valid and binding

by the courts of England, by those of the various states of the Union and by the federal tribunals. The superior court of Missouri has this to say of such stipulations: 'By such a stipulation, the parties constitute the engineer an arbitrator, and the provision is held, if anything, more binding than an ordinary submission, for the reason that it enters into and becomes a part of the consideration of the contract, without which it would not, in all probability, have been made.

" 'It has its origin in contracts for the building of important and extensive government works, and was designed to avoid harassing litigation over questions that can only be determined honestly by those possessed of scientific knowledge.' (*Williams* v. *Chicago* etc. *Ry. Co.*, 112 Mo. 487, (34 Am. St. Rep. 403, 20 S. W. 631).)

.     .     .     .     .     .     .     .

" . . . The defects now alleged in regard to the work,—viz. that water was allowed to be in the trenches to such an extent as to injure the cement before it had set, and the failure on the part of workmen properly to apply the cement to the lower half of many of the joints, were matters which, assuming that they did occur, should have been observed by the engineer, through his representatives, at the time the work was being done, and when they could have easily been remedied. No portion of the work could be properly covered with earth until it had been inspected and found in proper shape, and there is no pretense that any of it was so covered prior to such inspection as was desired or requested by the inspectors. When it was allowed to be so covered, there was a practical approval and acceptance of the work by the engineer, through his representatives, and this acceptance was affirmed and approved from month to month by his own certificates to the common council of the city, stating the amount of work done by plaintiff to the first of the current month and the amount due therefor. These certificates necessarily implied that the work so certified was done according to the specifications and to his approval. The final certificate showed all the agreed work to be done, necessarily to the approval and satisfaction of the engineer, and this certificate was reinforced by the oral statement of the engineer to the same effect, made to the council at the meeting at which it was received, except that it appeared from such oral statement that a few joints of pipe and a manhole certified completed had not been completed because of a request of the city that they should be deferred for a few days. Under these circumstances, we think that the city is clearly estopped to urge that plaintiff has not performed its contract.

"Authorities upon this point are not wanting. It must be borne in mind that we are speaking of a case where there was no fraud on the part of the contractor, operating to prevent a discovery of any imperfection, for there was not the slightest basis in the evidence for a conclusion to that effect. The most that could be contended is that there was evidence tending to show lack of care on the part of certain employees of plaintiff to comply fully at all times with the specifications in doing the work, and such a lack of care as should have been observed and remedied before the work was finally covered. In the case of *Schliess* v. *City of Grand Rapids,* 131 Mich. 52, (90 N. W. 700), the Supreme Court of Michigan said: 'The conduct of the defendant, through its inspector and architect and board of public works, estops it from now claiming that the contract was not fulfilled. Its authorized agents were there during the entire progress of the work, charged with the duty to see that it was properly done. The city, through its board of public works, acted weekly on the reports made, and paid the amounts due for the estimates. The law would not permit defendant to see this work go on, to ratify it day after day, and week by week, to see plaintiff putting in stone not in exact accord with the contract, and then say, when the work is done, "you have not complied with the contract." Its time to accept or reject was when the work was being done. It could not lull the plaintiff into the belief that the work was satisfactory, and, when completed, reject it.' "

Fraud is not alleged in the complaint. All that was stated in it after setting forth in detail how the work should have been done, is the following:

"X.—That defendant Rafael Berríos did not comply with said contract, nor with the conditions set forth in the plan and specifications for the work, nor with the technical requirements and ordinary practice of construction engineering.

"XI.—That on September 13, 1928, when the island was struck by the San Felipe hurricane, the building object of this action, in consequence of the hidden defects of construction stated, was totally destroyed.

"XII.—That because of said defective and vicious construction, the plaintiff has suffered damages to the extent of $8,150, which have not been paid by the defendants nor by any other person, for its use and benefit."

If the contractor did not comply, as the evidence discloses, with the specifications for the construction, he did so necessarily with the knowledge and consent of the owner, through its agent.

Therefore, in the absence of an allegation and a showing of fraud, since the owner accepted the construction, as shown by the evidence, it is clear that he lost his right to any further claim for the defects in the construction thereof.

Hence, the judgment dismissing the complaint should be affirmed.

Did the court err in rendering judgment without special condemnation of costs?

The defendants-appellants maintain that the legal provision applicable is Sec. 327 of the Code of Civil Procedure as amended by Act No. 69 of 1936 (Sess. Laws (1) page 352) and that is correct, since the judgment was rendered in 1937.

They further maintain that said statute is compulsory, and since the obstinacy of the plaintiffs was shown, the district court was bound to mulct him with the costs, including attorney's fees.

Verily, the statute is compulsory concerning the costs, but the attorney's fees still depend upon the obstinacy of the losing party discretionally viewed by the trial judge.

In dismissing the motion for rehearing, the court said:

"Taking into account all the circumstances that appear from the record and the doubtful nature of the issues of law that served as basis for the action, the motion for rehearing filed in this case is overruled."

And we have not been convinced that its decision was incorrect.

Hence, the judgment appealed from must be modified by adding "with costs to the party plaintiff." It is clear that said costs do not include attorney's fees. *McCormick* v. *González Martínez*, 52 P.R.R. ____.

Therefore, having dismissed plaintiff's appeal, and affirmed in part that of defendants', the judgment is thus modified and as modified affirmed.

Messrs. Justices Travieso and De Jesús took no part in the decision of this case.