CITY OF ST. CLAIR SHORES *v.* L & L
CONSTRUCTION COMPANY, INC.

Contracts—Paving—Performance—Evidence.
Record in city's action against paving contractor for breach of paving contract necessitating repairs costing nearly $33,000 *held,* to sustain trial court's finding that plaintiff had failed to show defendant had failed to perform its contract or that plaintiff was entitled to increase its *ad damnum* clause from $35,000 to $120,000.

Appeal from Macomb; Noe (Alton H.), J. Submitted April 12, 1961. (Docket No. 75, Calendar No. 48,441.) Decided June 29, 1961.

Case by City of St. Clair Shores, a municipal corporation, against L & L Construction Company, Inc., a Michigan corporation, and Manufacturers Casualty Insurance Company, a Pennsylvania corporation, for breach of contract for street paving.

References for Points in Headnotes
43 Am Jur, Public Works and Contracts § 67.

Judgment for defendants. Plaintiff appeals. Affirmed.

*John H. Yoe,* for plaintiff.

*Adams & Wade (Ralph H. Adams,* of counsel), for defendants.

Kelly, J. Plaintiff claimed defendant contractor breached a contract for paving Recreation avenue, in the city of St. Clair Shores, by not paving according to specifications, and that the cost of repair would amount to $32,935.

Defendants deny the work was substandard and allege that defendant L & L Construction Company was forced by the city to do the work at an unseasonably late period in the year because of pressure from residents on the street.

Defendants filed counterclaim against plaintiff in the amount of $12,000, claiming misrepresentation of subsoil conditions.

The contract, dated August 31, 1955, did not provide a time limit for completion. The Cook Construction Company had in the early part of 1955 released itself from a similar contract of construction because of plaintiff's lack of funds.

The paving was installed in the months of November and December. Defendant was prevented from beginning construction at an earlier date because defendant had to wait until a storm drain had been installed by another contractor. ·

During the course of the work 5 payments were made to defendant contractor and 5% of the contract price was withheld. The final inspection in late April or early May of 1956 showed the pavement in various stages of disintegration.

The trial was held before Hon. Alton H. Noe, circuit judge for the county of Macomb, without a jury.

At the conclusion of plaintiff's proofs, defendants moved for judgment in their favor (styled in the record motion for directed verdict), which was granted. After the trial court granted defendants' motion, defendant contractor withdrew its counterclaim. Thereafter plaintiff moved to increase the *ad·damnum* from $35,000 to $120,000, which motion was denied.

The inspector for plaintiff city inspected the job daily and did not at any time, or in any way, object or complain about defendant contractor's method of construction.

In *Schliess* v. *City of Grand Rapids,* 131 Mich 52, 62, we said:

"Furthermore, the conduct of the defendant, through its inspector and architect and board of public works, estops it from now claiming that the contract was not fulfilled. Its authorized agents were there during the entire progress of the work, charged with the duty to see that it was properly done. The city, through its board of public works, acted weekly upon the reports made, and paid the amounts due for the estimates. The law would not permit defendant to see this work go on, to ratify it day after day and week after week, to see plaintiff putting in stone not in exact accord with the contract, and then say, when the work is done, 'You have not complied with the contract.' Its time to accept or reject was when the work was being done. It could not lull the plaintiff into the belief that this work was satisfactory, and, when completed, reject it."

The trial court, in ruling upon the instant case, stated:

"But I am impressed with this, however, in the first place, this job would never have been done except for extreme pressure on the part of some land developers. Because from all the testimony here, and this is all plaintiff's testimony, it was quite

evident that the situation was such as to have made anybody extremely cautious about having this contract performed. It would not have been performed except for the extreme urgency brought about by the necessity for putting down the pavement and selling homes.

"Now in view of that, and I think the cases cited here have considered questions that have been quite akin to this in this respect, that all parties knew that an extreme risk was being undertaken here, the plaintiff as well as the defendant. Plaintiff frankly concedes that.

"What happened so far as the plaintiff is concerned? Plaintiff had an engineer who was in charge of this and states that he knew of the conditions. He specifically states, I believe, in response to a question somewhere along the line, that he certainly didn't recommend it. He said that the paving wasn't done during November and December under his direction, but only with his acquiescence, which would serve to indicate that the representative of the city was not at all willing to say that this was the proper thing to do. * * *

"It was an unusually bad November and December, and never under any other circumstances, except the urgency of the urging of certain land owners, only under their urging was this done. Everybody acknowledges that sensibly it should never have been done at that time. It seems to me that the plaintiff has failed to show that the defendant failed in any part of his contract, in the performance of his contract, that there was any failure in living up to his contract so far as the plaintiff is concerned."

The record sustains the trial court's granting of defendants' motion for judgment and denying plaintiff's motion to increase the *ad damnum* from $35,000 to $120,000.

Affirmed. Costs to appellees.

Dethmers, C. J., and Carr, Smith, Black, Edwards, Kavanagh, and Souris, JJ., concurred.