Laycock vs. Moon.

LAYCOCK, Respondent, vs. MOON, Appellant.

*September 7 — September 28, 1897.*

*Building contract, construction of: Appeal.*

1. A contract for the erection of a building which provides that the builder shall make a complete and workmanlike job, to the entire satisfaction of the proprietor and architect, who shall have full power to reject all work and materials not the best of the kind specified, and should such materials or labor be introduced they must be replaced at the builder's expense, and that the whole of the work is to be inspected as it goes on, and be accepted by the owner and architect before a final settlement is made,— by implication requires that the work and materials are to be accepted or rejected at the time of the inspection and during the progress of the work, and, if not then rejected, the defects must be deemed waived.

2. Where there was no conflict in the testimony as to material facts, so that they need not have been submitted to the jury, if their verdict was right, it is not necessary for the appellate court to examine the charge of the trial court, the appellant not being harmed thereby.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

The action is to recover $750 and interest, a balance claimed to be due to the plaintiff for doing the stone and brick work of a brick barn which the defendant built upon

his premises, in the city of Eau Claire, in the summer of the
year 1890; and $75.20 for the construction of a cistern.
There was no defense against the smaller claim.   The de-
fense against the larger claim was, generally, that the work
was negligently and unskilfully done; that unsuitable ma-
terials were used; that in several respects there was failure
to conform to the contract; and that the work stipulated by
the contract had never been fully performed.   More spe-
cifically, it was complained that unsuitable stones had been
used in the footing course of the foundation, which had caused
the building to settle unevenly, and cause cracks in the brick
walls; that the walls had not been "slushed" with mortar;
that the walls had not been "pointed" with mortar; that
the walls had not been "cleaned," and had been neither oiled
nor stained with "brick stain."

The contract, among other things, provided that the
plaintiff would make "a complete and workmanlike job, ac-
cording to the drawings and spirit of the specifications, to the
entire satisfaction of the proprietor and architect, who will
have full power to reject all work and materials not the best
of the kind specified, and, should such materials or labor be
introduced, it must be removed and replaced, entirely at the
contractor's expense."   It provides that the architect, C. L.
Brown, shall superintend the construction of the building,
and that "all questions arising must be submitted to the
architect, whose decision shall be final," and that "the whole
of the work is to be inspected as it goes on, and accepted
by the owner and architect before a final settlement is made;"
also, that "stone and brick work to be thoroughly cleaned
down after completion, and to have one coat of linseed oil
or brick stain, as the owner may decide."

The work was, in fact, done under the supervision of the
architect named, and inspected by him daily, and by the
defendant frequently, as the work progressed.   In some
instances, materials which had been used were rejected after

such inspection, and removed, and replaced by others. When the work was in substantial completion, the foundation was not pointed nor the walls cleaned, because the stagings of the carpenters were in the way. The walls were left in this condition until the next spring or summer, when the plaintiff sent one Alexander Wirt to do the pointing and cleaning. He pointed the foundation walls on two sides of the building, and so far as the defendant directed or desired it to be done, and cleaned off the walls. The walls were neither oiled nor stained, because the defendant did not decide which he would have, the oil or the stain. After the work was done, in June, 1890, the defendant paid the plaintiff upon the contract price the sum of $718, and gave no intimation that the job had not been done to his entire satisfaction. In process of time, cracks appeared in the brick walls. It was uncertain whether this was caused by unequal settling of the foundation or the action of the frost. Defendant afterwards refused to pay the balance, and the action was begun for the recovery of the balance of the contract price.

There was a jury trial, which resulted in a verdict for the plaintiff for $740. From a judgment on that verdict the defendant appeals.

For the appellant there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*. They contended, *inter alia*, that the plaintiff was not entitled to recover because he failed to prove that he had completed the contract according to the plans and specifications, and to the satisfaction of either owner or architect. *Hudson v. McCartney*, 33 Wis. 331; *Oakwood Retreat Asso. v. Rathborne*, 65 id. 177; *Bentley v. Davidson*, 74 id. 420; *Wendt v. Vogel*, 87 id. 462; Sutherland, Damages, § 712; *Gibson v. Cranage*, 39 Mich. 49; *McCarren v. McNulty*, 7 Gray, 139; *Brown v. Foster*, 113 Mass. 136; *Zaleski v. Clark*, 44 Conn. 218; *Daggett v. Johnson*, 49 Vt. 345; *Singerly v. Thayer*, 108 Pa. St. 291; *Doll v. Noble*, 116 N. Y. 230; *Moritz v. Larsen*, 70 Wis. 569; *Mc-*

*Donald v. Bryant*, 73 id 20; *Boutin v. Lindsley*, 84 id. 644; *Genni v. Hahn*, 82 id. 90; *Cohn v. Plumer*, 88 id. 622. Even if the owner was present, his failure to object to defective work is not a waiver of the explicit provisions of the contract. *Eaton v. Gladwell*, 66 N. W. Rep. (Mich.), 598.

For the respondent there was a brief by *Frawley, Bundy & Wilcox*, and oral argument by *C. T. Bundy*.

NEWMAN, J.   The plaintiff was bound, by his contract, to complete his job to the "entire satisfaction" of the defendant and his architect.   The defendant and his architect were reciprocally bound to make inspection of the work and materials, as the work progressed.   They had the power to accept or reject work or materials, and to require unsatisfactory work to be redone in a satisfactory manner, and unsatisfactory materials to be removed and their places supplied with other materials, such as should be in conformity with the contract, and satisfactory.   This all clearly implies that the work and materials were to be accepted or rejected at the time of such inspection, and during the progress of the work. It was no doubt intended, and the spirit of the contract implies, that work or materials which were not in conformity with the contract, and were not satisfactory, and, for that reason, were to be rejected, should be rejected at once, to the end that all faults might be corrected without loss or detriment to either party.   This provision was a prudent precaution against the surprise of a suppressed dissatisfaction sprung at the end of the work.   It was intended to prevent such surprises by requiring inspection *pari passu*, as the work went on, and a prompt rejection of either work or materials not conformable with the contract.   This provision of the contract was, in effect, an affirmative stipulation by the defendant to accept or reject, as the work progressed, such as should be deemed not conformable with the contract, and unsatisfactory.   Failure to express dissatisfaction

as the work progressed might fairly be interpreted as acceptance. Such acceptance must be deemed final and irrevocable; else the plaintiff may be lured on, by a delusive appearance, into expenditures for the completion of an expensive work, which is foredoomed to rejection. This stipulation of the contract was intended to avert from him such ill fortune.

Clearly, the defects claimed in the foundation wall, such as too small footing stones and the absence of slushing of the mortar, were obvious to the stipulated inspection. It is also clear that whatever dissatisfaction was expressed was heeded and the fault amended, so that no expressed dissatisfaction rested on the work as it progressed, or within a reasonable time after its completion. The architect expressed his entire satisfaction with the work. If the defendant failed at times to inspect the work, that may have been to his own loss. He must be bound, nevertheless, by the acquiescence of the architect who represented him. There was no conflict in the testimony which tends to show that the work was accepted, and the question needed not to have gone to the jury. For that reason it is unnecessary to examine the charge of the court. If wrong, it did the defendant no harm.

Such matters relating to the completion of the work as the pointing, cleaning, and staining of the walls might be waived by the defendant. Apparently, they were so waived. At least, the verdict of the jury must be deemed to have settled that question.

No reversible error is found.

*By the Court.*— The judgment of the circuit court is affirmed.