SIEBERT, Respondent, vs. ROTH, imp., Appellant.

*May 11—May 29, 1903.*

*Building contracts: Supervision of architect: Waiver of defects: Mechanic's lien.*

Where a building contract provides that the contractor shall submit, as to the character of the materials used and work done, to the judgment of a designated architect, and will remove

from the premises, on demand of the architect, any materials declared unfit to be used in the building, failure on the part of the architect to promptly reject defective material or construction as the work proceeds constitutes a waiver of such defects.

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Affirmed.*

This is an action by a principal contractor to foreclose a mechanic's lien. The answer alleged defective and incomplete construction of the building, and counterclaimed for damages therefor. The action was referred to a referee, who made findings, which were confirmed by the court. No bill of exceptions has been settled, and the case comes to this court simply upon the findings of the referee.

It appears by the findings that March 11, 1899, the plaintiff, with one Richard Siebert and one Kirsten, entered into a written contract with the defendant *Roth* to do all the carpenter and joiner work on a certain building to be erected by the defendant on her premises, and furnish materials therefor, according to specifications which were made part of the contract, for the sum of $8,400, of which eighty-five per cent. was to be paid upon certificates of the superintendent as the building progressed, and fifteen per cent. thereof after the completion and acceptance of the building, the work and materials to be to the entire satisfaction of F. Graf, architect, who was declared to be the superintendent of the building. The specifications contained the following clause:

"The contractor will be strictly held to execute said work and use such materials as hereinafter described, and will be further held to submit as to the character of the materials used and the work done to the judgment of the architect and superintendent, and will remove from the premises, on the written demand of the architect, any unsuitable materials declared to be unfit to be used on the building. . . . . All payments made on the work during its progress are on account of the contract, and shall in no case be considered as an acceptance of the work executed, but the contractor will be liable to all the conditions of the contract until the work is accepted as finished and completed."

It further appears by the findings that the contractors completed their work on November 8, 1899, except that in certain particulars the work and materials did not conform to the specifications, one of which particulars was found by the referee as follows:

"A large quantity of maple flooring is No. 2 maple, instead of being best dressed and matched white maple, as required by the specifications, and was not sandpapered or finished as required; that said flooring as constructed is worth, by reason of the difference in quality of lumber, thirty-three dollars and fifty cents ($33.50) less than if constructed of the quality required; and that it would cost to refinish said flooring, so as to make it in accordance with the requirements of the plans and specifications, the sum of two hundred forty dollars ($240)."

The referee also found, with regard to the laying of the floors, as follows:

"That the plaintiff commenced the laying of the above-named floor in September, 1899, and continued working thereon for about eight weeks; that during said time defendant's architect and superintendent frequently saw the same, and made no written demand for their removal, nor declared any of the materials used unsuitable; that said superintendent did, after much of the floors were down, object to the same verbally, but thereafter allowed said work to be continued without requiring its removal or change."

The referee further found that the balance due on the contract, after deducting all payments, was $198.91, and that there was also due $79.75 for extras, which sums and interest amounted in all to $281.82, and that plaintiffs agreed to take the lumber in a certain shed of the defendant's for the sum of $175, and apply the same on the contract, which sum, with interest, being deducted from the amount due the contractors, left $94.77 still due. The referee also found that the interests of Richard Siebert and Oscar Kirsten had been duly assigned to the plaintiff before the commencement of this action. Upon these facts the referee concluded that all defects

in the performance of the contract had been waived by the failure of the superintendent to reject the defective material and work, and that plaintiff was entitled to a lien of $94.77. Judgment being rendered in accordance with these findings, the defendant *Roth* appeals.

The cause was submitted for the appellant on the brief of *Wheeler & Perry,* and for the respondent on that of *Quarles, Spence & Quarles.*

WINSLOW, J.   This case is ruled by the cases of *Laycock v. Moon,* 97 Wis. 59, 72 N. W. 372; *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327, and *Ashland L., S. & C. Co. v. Shores,* 105 Wis. 122, 81 N. W. 136.   The doctrine of waiver of defects either in material or construction of a building, by failure on the part of the superintendent to promptly reject the same in the manner provided by the contract as the work proceeds (when such power is reserved in the contract), is so fully stated in these cases that it is unnecessary to more than refer to them.

It is suggested by the appellant that the finding of the court shows that the floors were not sandpapered or finished at all; that there was a total absence of this work; that it could not be ordered or approved by the superintendent; and hence there could be no waiver.   Even admitting that such a distinction might be drawn, the difficulty is that the finding is not that the work of sandpapering and finishing was left totally undone, but that it was not sandpapered or finished *as required.*   This may well mean that it was not done properly, or in the manner required by the contract.   We should feel required to so construe the finding if it were necessary to support the judgment.

*By the Court.*—Judgment affirmed.