TOWN OF PACKWAUKEE v. AMERICAN BRIDGE CO. OF NEW YORK.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1910.)

No. 1,672.

1. CONTRACTS (§ 170*)—CONSTRUCTION—PRACTICAL CONSTRUCTION BY PARTIES.
Where a written contract is fairly susceptible of the interpretation placed on it by the parties during performance, such construction should be given it by the courts.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. § 170.*

Practical construction of contracts by parties, see note to Davis v. Alpha Portland Cement Co., 73 C. C. A. 392.]

2. CONTRACTS (§ 262*)—BUILDING CONTRACTS—PERFORMANCE—APPROVAL BY OWNER'S REPRESENTATIVE.
Where a contract for a building or other structure gives the owner the right to supervise and inspect the work as it progresses by his representative, with power to approve or reject material or workmanship, after the building or structure has been completed and the owner has the use of it, he cannot rescind the contract and refuse to pay the contract price on the ground of defects in material or workmanship which was approved by his representative.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1181–1183; Dec. Dig. § 262.*]

3. BRIDGES (§ 20*)—CONTRACT FOR CONSTRUCTION—PERFORMANCE—APPROVAL BY SUPERINTENDENT.
A contract with a township for the construction of a bridge did not expressly provide that the town should have an inspector on the work, nor that material or work should be accepted or rejected in the course of construction, but was susceptible of such construction, and was evidently so understood by the parties; the town board, as authorized by statute, appointing a person to superintend the work, who exercised the right to approve or reject material and workmanship as the work progressed. The contractor sublet the construction of the substructure, and accepted and paid for the same only after the material and workmanship had been approved by the town's representative. Held that, after the bridge had been completed and opened to public travel the town could not refuse to accept and pay for it on the ground of alleged defects in the substructure which, if they existed, were obvious to its superintendent when the work

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was being done; its remedy, if any, being the recovery of damages for breach of the contract.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 37–47; Dec. Dig. § 20.*]

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

At Law. Action by the American Bridge Company of New York against the Town of Packwaukee. Judgment for plaintiff, and defendant brings error. Affirmed.

The town of Packwaukee, plaintiff in error, a township municipality of Wisconsin, entered into a contract in writing for construction by the corporation, defendant in error, of a bridge across Fox river, within the township, for highway purposes, for which $6,690 was to be paid by the town. Upon alleged completion of the bridge thereunder the representatives of the town refused to pay for the work, and notified the contractor that acceptance was refused, and the bridge must be removed, for various alleged departures from the contract. The defendant in error brought suit to recover the contract price, and trial of the issues to a jury resulted in direction by the court of a verdict against the town for such recovery, with verdict and judgment entered accordingly. For reversal thereof this writ of error is prosecuted by the town, with numerous errors assigned on rulings of the trial court, in such direction of verdict, and in the admission and rejection of testimony. The issues, facts, and questions presented are sufficiently stated in the opinion.

D. W. McNamara (A. J. Schmitz, of counsel), for plaintiff in error.
Frank M. Hoyt (Thomas M. Kearney, of counsel), for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The judgment against the town of Packwaukee, plaintiff in error, is for the contract price of a bridge, constructed by the American Bridge Company, plaintiff in the suit, for a highway crossing over Fox river, with complete performance of the contract as the ultimate fact at issue under the pleadings. In the plaintiff's complaint, after statements of authority for entering into the contract, and that it was made between the parties, full performance is averred on the part of the plaintiff, and refusal of the town to accept and pay for the work. It further specifies objections raised by the town for failure to comply with the contract in various requirements, alleges such claims to be "wholly without foundation," and compliance with the contract in each instance referred to. The answer admits all the allegations, except such performance, and sets up various specifications of failure therein, which include change in location of the bridge, and insufficiency of piling, both in material and work provided by the contract, and of stone and mason work in abutments and center pier, whereby such structures were insecure, so that the bridge work placed thereon failed to operate in conformity with the contract requirements. Aside from minor counterclaims set up for alleged useless expense incurred by the town in inspection and in building highway approaches, the defense rests entirely on denial of liability, in whole or in part, for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

want of substantial performance by the contracting plaintiff; and these averments, if both provable under the contract provisions and circumstances in evidence and proven in fact, may well defeat recovery upon the contract, under the utmost liberality of authorities cited in reference to performance of like work beneficial to the defendant. On the trial of the issues thus presented, much testimony was received tending to support the alleged departures from the contract, in the piling and structure of abutments and center pier, causing insufficiency of foundations, and difficulty in use of the swing bridge. The trial court, however, ultimately withdrew such testimony from consideration by the jury, overruled offers of other testimony in line therewith, and directed return of a verdict for the plaintiff, so that the question of law is presented, whether all such matters tendered in support of the defense set up in the answer were rightly excluded, under the contract and state of facts conclusively established by the evidence.

The contract was in writing, prepared by the American Bridge Company, embracing specifications with a recital that they are "intended to be complete in every respect, but any omission or lack of detail will not excuse the contractor from building and finishing a complete structure, ready for the opening of travel across it and the operation of the swinging parts"; and that "any question or dispute as to the intent or meaning of these specifications, in whole or in part, shall be referred to the town of Packwaukee and county commissioners, or to a disinterested party, and their decision shall be final." It specifies in reference to piling, stonework, and other requirements of the substructure, as described in the answer in averring departure therefrom, and no question arises that such terms were specified therein. It further contains these provisions as to inspection and acceptability of work and materials: That "all facilities for inspection of material and workmanship shall be furnished by the contractor"; that "work hereunder shall be inspected for acceptance" on behalf of the town, on notice "that the work is ready for inspection"; that the town representatives "are to locate position of pier and abutments," and are to receive 10 days' notice "when work on substructure will be commenced"; that the stone used therein "shall meet with the approval of the commissioners"; that the masonry work shall "be done to the entire satisfaction" of the town "or their representative"; that "piles shall be placed as shown on drawings" and be of timber, as specified, or equally good, "acceptable to the commissioners"; that "both material and workmanship" of timber foundation "will be subject to the inspection and acceptance of the engineer." The concluding provision of the contract reads, for payment of $6,690 "30 days after completion and acceptance."

In neither of the terms is a purpose expressly stated to have an inspector on the work throughout its progress, nor that material or work of the substructure are to be rejected or accepted in the course of construction, nor do the terms necessarily convey an inference for or against such purpose; but the evidence is convincing—and as we believe conclusive—that such was their purpose, in the understanding and conduct of both parties. The chairman of the town, William

Baker, acted as its inspector of work and materials, and supervised operations throughout the construction of the substructure; and this under appointment by the town board to that end, shown both by oral testimony and by record of its proceedings in reference to inspection of mason work, whereby one Schatzka was thus "appointed to assist" the chairman "to see that the stone mason work * * * is carried out according to the specifications of the contract." The plaintiff (as contractor for the entire work) sublet the construction of the substructure to another party, whereof the town board was fully advised—and no question is raised as to his competency—but the representative of the plaintiff, designated in the contract as "contracting manager" thereof, promptly attended to every requirement therein on the part of the town to make materials and work satisfactory. Not only was the entire responsibility of the plaintiff therefor constantly recognized, but the chairman was informed (in writing) that strict compliance with the specifications therein was required, as they "were made very strict in an effort to secure a good piece of work," and that material must "be accepted, before we can allow it to be placed in the work." Nor does it appear from the record, either in testimony received or in tenders of proof, that evasion of any of the contract specifications was sought or attempted by the plaintiff, nor that it was informed at any time prior to the refusal of payment for the bridge of either of the violations of the contract set up in defense in respect of the foundations. It is true that, after the bridge was on the foundations, the chairman wrote plaintiff that "the design for the south pier is not strong enough," and "the pier is broken and sags downstream"; but this complaint was at once taken up before the town board, and the facts were presented and seemingly undisputed as follows: That location of the bridge was changed from the original design, so that an extensive fill was required (made by the town) for the south approach to the bridge; that the mass of earth was thus placed against the abutment, without reinforcing the abutment (on the water side) with riprap (from a nearby quarry) as plaintiff had advised the chairman was needful; that from such cause alone the abutment was broken and pushed forward about one foot; that the town refused to bear the expense of strengthening (with additional piling and anchorage) and restoring the abutment, and such work was performed by the plaintiff, without charge to the town, at considerable expense; and that the town refused and has failed to place riprapping against the abutment, for further protection, as the plaintiff then urged, under a design left with the board therefor.

For every purpose of the present inquiry, however, the alleged departures from the specifications in the foundation work must be assumed to be verities of fact in the case, except in the instances which are otherwise settled by evidence beyond controversy. Thus, in reference to the averments of mislocation of the bridge, no impeachment is tendered of the evidence in writing and of record that the chairman of the town, in conjunction with the government engineer in charge of Fox river improvements, changed and fixed such location and the work was so located; that a question arose, by or before

the town board, whether such action was proper, and the plaintiff's manager attended a meeting of the board, on notice, for settlement of the question; and that, upon hearing, the board adopted and recorded a resolution approving such location. Also, while it is true (as averred) that the swing of the bridge failed to operate freely (some time after the bridge was opened for use), the contractor, upon notice, promptly and readily corrected the adjustment (clearing as well accumulations of sand in the turntable), so that free operation was restored and has continued without further difficulty; but an issue of fact thereupon remains for consideration (through expert testimony offered under the averments), whether settlement of the foundations may not produce future obstruction. The averments of fact, therefore, which we thus assume to be true, are, in effect, that both piling and masonry in the abutments and center pier failed to conform to the specifications, and that the town became entitled to rescind and repudiate the contract, for want of substantial performance, as sought in defense of the suit, unless the evidence is, nevertheless, conclusive of approval and acceptance thereof by the town, in pursuance of the contract, within the rule of law which may then become applicable.

The main controversy, both at the trial and under this writ, arises over the question, whether the rule adopted by the trial court, in directing the verdict, is rightly applicable to the contract in suit, and its solution is needful for ultimate disposition of the case, irrespective of another contention that such issue is not presented by the plaintiff's complaint. Under the contract provisions above recited and the appointment of Chairman Baker thereunder, the evidence upon which acceptance of all materials and work in the substructure is predicated chiefly appears in written correspondence between the contracting plaintiff and Chairman Baker, together with references therein to interviews and facts appearing in undisputed oral testimony. Its bearing is twofold: As proof (1) of mutual understanding and interpretation of the contract provisions thus carried out, and (2) of approvals and acceptance in fact thereunder. Before proceeding to its consideration, however, we take up the single objection urged to this evidence—aside from want of proper pleading—and the single alleged dispute thereof.

On behalf of plaintiff in error it is contended, in substance, that any appointment of the chairman to act for the town board, or action by him thereunder, which extends to approval and acceptance of the work at any stage, would be "an unauthorized delegation of its powers." This proposition we believe to be untenable, neither within the rulings of various authorities cited in its support, nor applicable here, under the power expressly conferred upon the town board by section 1223, Wis. St. 1898, "to appoint some competent person or persons to superintend, under their direction, the construction of" bridges and other highway work. The testimony referred to as disputing the evidence that the chairman was appointed and acted as the representative of the town, is that of such chairman (offered in defense), in substance, that he did not understand, in his acts of approval or letters of acceptance in evidence, that he represented the town, but be-

lieved he "was acting for Mr. Emerson" (the contracting manager) in "a mere friendly way." We deem it sufficient to remark, that his version of these letters and acts cannot be accepted as evidence of their import—especially in the absence of corroboration, circumstantial or otherwise—and that the (so-called) testimony above cited is without force for interpretation of letters or action.

In reference to the letters and testimony relied upon as proving acceptance of materials and work, alleged in the answer to be defective, the leading instances will suffice for mention on the present inquiry. The most serious complaint pressed on behalf of the town, in offers of testimony and argument, relates to the piling which forms the foundation of abutments and center pier—as neither conforming to the contract in the quality of the piles, nor in the method of driving —while the testimony is uncontroverted; that the timber for the piles was selected from standing trees, pointed out by Baker and designated for the purpose—by Baker for the town and Emerson for the contractor, acting conjointly; that Emerson then sublet a contract for their delivery; and that piles thus delivered were inspected and accepted by Baker, and thereafter placed and driven by the subcontractor, under like inspection and approval by Baker throughout performance. When the substructure of masonry (on the piling) was nearly completed, Baker gave a written voucher for payment for the piles, stating (in effect) that they were driven and accepted. Correspondence was frequent between the plaintiff and Baker, throughout the progress of work on the substructure, as to stone, timber, and lumber delivered for use therein, showing requests by the plaintiff for inspection of such material and report whether it is satisfactory, and replies by Baker reporting inspection and results, with rejections of material in some instances, but mainly approvals as satisfactory; and no instance appears of material used in the work which was disapproved by Baker. On report from the subcontractor "that the stonework is about completed and in a satisfactory manner," the plaintiff, in a letter to Baker, after mentioning a request by the stone contractors for payment on their deliveries, recited the above terms of advice as to stonework, and concluded:

"Will you, therefore, give me a statement to this effect, accepting the stone as delivered and placed according to the contract, in order that we may be able to pay the bill promptly."

Baker replied, on November 25th:

"In answer to yours of the 20th, the stone which is laid is satisfactory, but there are about 4½ cords to be delivered to be used at the end of the bridge at the roadway. The bridge is now on the foundation. Mr. Whitson would like pay for 73 piles accepted and driven."

As the plaintiff had no information from any source—either at this stage, or until after completion and public use of the bridge—that any of the work or material in the foundations was not in conformity with the specifications, and as no ground appears for suspicion on its part that the clear specifications therefor would either be evaded by the subcontractor for the work, or overlooked by the chairman as inspector, we believe the bona fides of its course, in requesting

inspection and acceptance during the progress of the work, to be free from doubt. It is not contended that the specifications therefor were open to misunderstanding by Baker, nor that he was either misled, ignorant, or unmindful of their character or importance; nor does it appear, that either of the alleged departures therefrom required special or technical skill for discovery and seasonable objection before material or work were in place and beyond correction. For example, complaint is now urged, with force, that foundation piles were not driven, as the specifications require, "until they did not move more than one inch," under the last blow of the hammer, but that such piling was left in place when it moved at the last blow "12 to 15 inches"—a departure plainly observable under ordinary and unskilled inspection.

These deductions, therefore, we believe to be unmistakable from the facts as established: That the performance of this work was conducted throughout, under mutual understanding of the parties that the contract provisions intended such inspection and approval or disapproval of materials and work, on the part of the town, in the course of construction of the substructure; that this purpose was undertaken on behalf of the town, and was relied upon by the contractor plaintiff in good faith throughout such work; and that the benefits of the entire work have been received by the town in use of the bridge for highway purposes. Moreover, that the provisions of the contract referred to, when read as an entirety, are fairly susceptible of the interpretation thus adopted, and they should be construed accordingly. District of Columbia v. Gallaher, 124 U. S. 505, 570, 8 Sup. Ct. 585, 31 L. Ed. 526; Accumulator Co. v. Dubuque St. Ry. Co., 64 Fed. 70, 74, 12 C. C. A. 37; 27 U. S. App. 364, 372; 9 Cyc. 588.

Under this premise of ultimate fact, we come to the inquiry, whether a rule of law, then, arises to exclude the sole defense set up by the town to rescind the contract for alleged want of complete performance, and thus defeat recovery thereunder. For all purposes of the trial and for reversal of the judgment, the town has rested its defense upon the contentions that the general rules at common law in reference to contract obligations and liabilities were alone applicable to the case. These rules are, in substance, that the contractor undertaking performance of such work may be held strictly to every requirement of the contract, and cannot recover thereunder unless substantial performance (at least) is proven or waived; that the party for whom the work is to be performed as an entirety incurs no duty to inspect and approve or disapprove any portions of material or work entering therein, before tender by the contractor as completed, unless his contract so provides; and that in the exercise of his undoubted right to keep watch over the work during its progress, either personally or through a representative, no general obligation arises therein in favor of the contractor to approve or disapprove portions of the work, but that supervision and responsibility for complete performance rests with the contractor, unaffected by such inspection. In the provisions of the present contract, however (as above defined), whereby the town undertakes not only inspection, but rejection or approval of material and work in the course of construc-

tion, a distinction is obvious from the general line of contract work above mentioned, so that the rule referred to is not justly applicable to performance thereunder, without modification in conformity with such provisions. In reference to like terms in contracts for the erection of buildings, under inspection and supervision by an architect, the doctrine is well settled in Wisconsin, as thus stated in Ashland Lime, Salt & Cement Co. v. Shores, 105 Wis. 122, 127, 81 N. W. 136, 138:

"Where a building contract provides that the building shall be constructed according to certain plans and specifications to the satisfaction of the supervising architect, who shall inspect all material and work as the building is constructed, with power to reject any material or work not deemed by him to be in compliance with the contract, and to require unsatisfactory construction to be removed and the work done over in a satisfactory manner, the manifest intent is that unsatisfactory material or construction shall be promptly rejected, and that the architect shall not, by silence, allow unsatisfactory construction to proceed to a point where its removal from the building will be attended with serious loss to the builder, and then reject it; that a failure to reject material or work seasonably, and in the manner contemplated by the contract, operates as a waiver of defects in regard thereto, and an irrevocable acceptance of such material or work as satisfactory under the contract, in the absence of some clear, unmistakable provision in such contract to the contrary."

Other Wisconsin cases are of like tenor. Laycock v. Moon, 97 Wis. 59, 62, 72 N. W. 372; Laycock v. Parker, 103 Wis. 161, 170, 79 N. W. 327; Siebert v. Roth, 118 Wis. 250, 253, 95 N. W. 118. Furthermore, in the federal jurisdiction, and as well in other states, the doctrine above stated of exception to the general rule is well recognized and upheld. In a recent case—City of St. Charles v. Stookey, 154 Fed. 772, 776, 85 C. C. A. 494—the Circuit Court of Appeals for the Eighth circuit pronounces and applies like doctrine in favor of a contractor for the construction of municipal waterworks, under a contract and specifications providing for inspection and supervision on the part of the city by its engineer. The opinion is elaborate and well considered, citing numerous authorities for the conclusions stated —that performance to the satisfaction of the engineer (acting for the city) amounts to substantial performance in the sense of the contract; that when the city "has derived and retains substantial benefits" therefrom, or has imposed upon the contractor "material losses through the latter's partial performance," the city "cannot rescind the contract on account of the failure of the other party to complete his performance, but the agreement must stand," and the city must perform its part, having recourse only "in damages for the breach," either in separate suit or by counterclaim. See, also, District of Columbia v. Gallaher, 124 U. S. 505, 510, 8 Sup. Ct. 585, 31 L. Ed. 526.

The line of precedents above cited are alike in their import, strictly limiting the ground for the rule to approvals and acceptances, express or implied, within the meaning of the contract provisions, in the course of performance, and making it operative only to prevent the party so accepting the work and its benefits from rescinding the entire contract obligation on its part, for alleged want of complete performance. Its application must be further restricted, as recognized by these authorities, both to work and materials which were plainly

open to inspection during the performance, and to cases of undoubted endeavor on the part of the contracting party, in entire good faith throughout, to have the work made and completed in conformity with the contract requirements. Thus limited, we believe their doctrine to be just and well established by modern authorities, as a modification of or exception to the earlier common-law rule in suit upon contracts, and plainly applicable to the present state of facts. True, a distinction of fact appears in the case at bar, from those above cited, in the delegation of supervision on behalf of the town to the chairman of the board, who cannot be assumed to exercise or possess the qualifications of an engineer or professional expert in his supervision; and undoubtedly his action by way of acceptance, as representative of the town, can extend only to materials and work which are plainly contemplated by both contracting parties, as within his competency to be approved or disapproved. But when such limitation is strictly observed, the above-stated doctrine is equally applicable to the delegation and performance thereunder; and, in this case, the initial appointment of Baker to supervise the work was both made and exercised in contemplation of the work then commencing, which was the location of abutments and center pier for the bridge, and delivery and driving of the piles for their foundations; while the formal resolution thereafter adopted by the town board, as recorded, in express terms appoints Schatzka "to assist Wm. Baker, chairman * * * to see that the stone mason work of the" bridge "is carried out according to the specifications of the contract." So, the piling and stone work—mainly, if not entirely, the subject-matter of the defense now set up—were unmistakably placed under the supervision of Baker, and thus brought within the rule. We are of opinion, therefore, that the acceptances proven thereunder, together with completion of the bridge by the contractor as stated and its appropriation for highway purposes, are effectual to bar the town from rescinding the contract for alleged nonperformance; and that, for breaches of contract obligations on the part of the contractor, its remedy is open and must be sought in damages for such breach.

The plaintiff in error contends, however, that such evidence of acceptance is inadmissible under the complaint, for two reasons: First, that it is inconsistent with the averment thereof that the town board refused "to accept the said bridge and work so performed"; and, second, that the complaint fails to allege acts of waiver or acceptance on the part of the town. The proposition of inconsistency is untenable, as we believe, for the reason that the averment referred to obviously relates to the ultimate refusal of the town to accept the bridge as an entirety, as wanting in complete performance, which fact is alike averred in the answer. Whether the complaint may not be defective, under the Wisconsin (code) practice, is a question not met by any authority brought to our attention, and not free from difficulty, in view, especially, of the particular averments of reasons assigned by the town for its refusal to accept the bridge, although the contention that the acceptance must be pleaded as waivers of contract conditions does not impress us to be sound. If rightly termed waivers, in any sense, the fact of acceptances alone (as before stated) does

not waive obligations or conditions imposed by the contract on the contractor. We believe, however, that solution of this question is not needful under the present record. The evidence was introduced and received at the trial, over objections directed alone to its admissibility under the contract, without claim of want of notice thereof through the complaint or of surprise therein, and the controversy throughout was over the competency and effect of such proof to bind the town under the law applicable to the contract provisions. With the issue thus assumed, presented, and tried out between the parties, the alleged defect in the complaint would furnish no just ground for reversal of the judgment, resting alone on such issue, and leaving remedies open to the town, which are not sought in the present suit.

The remaining assignments of error relate to rulings of the trial court in the reception or exclusion of testimony. Their examination discloses no reversible error in either direction, and we are impressed with neither of such assignments as requiring discussion.

The judgment of the Circuit Court is affirmed.