GRANETTE PRODUCTS COMPANY, Appellee, v. ARTHUR H. NEUMANN & COMPANY, Appellant.

No. 38413.

SEPTEMBER 28, 1928.

REHEARING DENIED APRIL 5, 1929.

*Carr, Cox, Evans & Riley,* for appellant.

*Fred F. Keithley* and *Guy A. Miller,* for appellee.

FAVILLE, J.—I. This is the second time this cause has been in this court. See *Granette Products Co. v. Neumann & Co.,* 200 Iowa 572. The appellant entered into a contract with the Independent School District of Council Bluffs for the construction of a high-school building. After appellant had obtained said contract, it in turn entered into a contract with the appellee, by the terms of which the appellee undertook to furnish appellant a certain manufactured architectural stone known as ''granette,''

to be used in the construction of said building. Appellee sues to recover for the granette which it claims it furnished to appellant under its contract, and which it contends the architects in charge of the construction of the building accepted and approved. The appellant contends that the material furnished by appellee was rejected *in toto* by the architects, and that such rejection is binding and conclusive upon appellee, and that appellant is not liable therefor. Appellant pleaded that a custom existed by which, in such cases, the principal contract between the appellant and the school district was binding upon appellee, and contends that, under such principal contract, the architects could reject the material furnished by appellee at any time; and appellant contends that the material was so rejected. Appellant also contends that, as a matter of law, regardless of the custom pleaded, the principal contract was binding on the appellee, and that because thereof the rejection of the material by the architects was conclusive of appellee's right to recover from appellant.

The trial court submitted the question of the alleged custom to the jury, under an instruction to the effect that, if the jury found that by such a custom the principal contract was binding on the appellee, then the rejection of the material  by the architects would be conclusive against appellee. The jury found for appellee, and hence must have found that no custom existed, as claimed by appellant. We therefore consider appellant's contention that, as a matter of law, the principal contract was binding upon appellee as to the right of the architects to reject the material at any time.

The contract between appellant and appellee provides, in part, as follows:

"Section I. The subcontractor agrees to furnish all labor and materials necessary to complete work as described in Section II of this agreement for the Council Bluffs High School, Council Bluffs, Ia., according to plans and specifications prepared by Proudfoot, Bird & Rawson, architects, located at Des Moines, Iowa.

"Section II. The subcontractor agrees that the material to be furnished and work to be done by him is as follows: All of the 'granette' concrete architectural stone trim, including all

sills, steps, etc., in lieu of Bedford stone as mentioned and called for in revised plans and specifications as prepared by the above mentioned architects. Sample of 'granette' to be approved by architects. It is further agreed that the subcontractor will furnish setting plans and number all stones, also provide each stone with anchor and lewis holes as necessary. Setting plans to be submitted to architects, also all finished product to be same as approved sample, also all moulding to run true and corners square and straight. All of the above mentioned work to be subject to the approval of the above mentioned architects.''

This portion of the contract was before us on the former appeal. We therein held that the appellee was a subcontractor, rather than a mere seller of material, and recognized the general rule that, where a subcontractor undertakes to do work according to the plans and specifications of the principal contract, such plans and specifications become a part of his contract, even without an express provision that they are so made a part thereof. We said:

''We are of the opinion that the provisions of the specifications relating to the right of the architects to require the contractor to remove from the premises such of the materials or work as in their opinion are not in accordance with the plans and specifications, and to substitute satisfactory work and materials, and providing that the decision of the architects as to the true intent and meaning of the plans and specifications shall be final and binding upon both parties to the contract, and that the term 'contractor,' as used in the plans and specifications, should mean the person or persons who contracted for the performance of the work, became also parts of the contract, and binding upon the plaintiff.''

II. The plans and specifications contained the following provisions:

''The contractor is to provide all materials and labor necessary for the complete and substantial execution of everything described, shown or reasonably implied in the drawings and specifications, including all transportation, scaffolding, apparatus and utensils requisite for the same. Unless otherwise specified, the materials are to be the best of their respective kinds. All the

work shall be done in the best manner by skilled mechanics. The architects or their representatives are at all times to have access to the work, and may by written notice require the contractor to dismiss forthwith such workmen as they deem incompetent or careless, and may also require the contractor to remove from the premises such of his materials or work as in their opinion are not in accordance with the plans and specifications, and to substitute without delay satisfactory work and materials, the expense of so doing and of making good other work disturbed by the change shall be borne by the contractor.''

The plans and specifications also contained this further provision:

''The decision of the architects as to the true intent and meaning of the plans and specifications shall be final and binding upon both parties to the contract.''

The principal contract between defendant and the school district for the construction of the high school contained the following provision:

''The party of the first part shall provide sufficient safe and proper facilities at all times for the inspection of the work by the architects, or their authorized representatives; shall, within twenty-four hours after receiving written notice from the architects to that effect, proceed to remove from the grounds or buildings all materials condemned by them, whether worked or unworked, and to take down all portions of the work which the architects shall by like written notice condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications, and shall make good all work damaged or destroyed thereby.''

The contention of appellant is that the appellee is conclusively bound by a rejection by the architects of the material furnished by appellee. It is contended by appellant that such rejection on the part of the architects was conclusively shown by the evidence in the case, and that this is final, determinative, and binding upon the appellee, and that the court should have directed a verdict for the appellant.

The appellee's contention at this point is that, even if the

appellee is deemed to be bound by the plans and specifications and by the terms and provisions of the principal contract, under the evidence in the case the architects did approve of the material furnished by the appellee, and, having once so approved of said material, could not thereafter reject the same, and such rejection would not be binding upon the appellee.

For the purposes of determination of the question involved at this point regarding the ruling on the motion for a directed verdict, we assume, without deciding, that the appellee, as such subcontractor, was bound not only by the terms and provisions of the contract between the appellee and the appellant, but also by the plans and specifications for the construction of said building, and likewise by the terms and provisions of the principal contract between the appellant and the school district, in so far as they were applicable to the matter involved in the contract between the appellee and the appellant regarding the material to be furnished. *Blanding v. Davenport, I. & D. R. Co.*, 88 Iowa 225. See, also, *Avery v. Board of Supervisors*, 71 Mich. 538 (39 N. W. 742).

The appellee offered evidence tending to show that, after the first car of material was shipped by the appellee, a representative of the architects came to appellee's plant and inspected all of the material, prior to the loading of the same in the car for shipment, and that the portion of the material that was not then satisfactory to the architects was marked as rejected, and was not shipped; that, after pieces of the material were so marked as rejected, appellee made new pieces, to replace those that were rejected; that, from time to time, lists of pieces that had been rejected at the building were forwarded to appellee from Council Bluffs, and were replaced by other pieces furnished by appellee; that out of approximately 6,000 pieces that were made, all but the first carload, totaling about 800 pieces, were inspected at appellee's plant, and were set aside for shipment by the representatives of the architects; that the portion that was so set aside was requested by the architects to be shipped, and the portion that was rejected was directed to be remade. It appears that appellee manufactured and shipped to Council Bluffs seven carloads of material between October 13, 1920, and April 2, 1921. It also appears from the evidence that a superintendent acting for the architects was upon the ground at Council Bluffs, and inspected

the material as it arrived, and that so much of the material as was disapproved by said superintendent was marked as rejected, and the appellee was so notified, and the rejected material was remade. It also appears that a test of the material was made after a portion of it had been delivered at Council Bluffs, and that the superintendent for the architects expressed his satisfaction at the test made. Later, the architects notified the appellant that they had rejected all the material furnished by appellee, and ordered its removal from the building and grounds. The record shows that another material, Bedford stone, was substituted, by agreement between the appellant and the school district, and that the appellant was allowed additional compensation for the change. Thereupon, appellant advised the appellee by letter that the concrete architectural stone delivered under the contract had been rejected by the architects, as not conforming to the plans and specifications and the approved sample, and that the appellant elected to rescind and cancel the contract. At that time, substantially 85 per cent of the stone had been delivered, and practically all of the balance of the stone required in the contract had been made, and was waiting until it was sufficiently hardened to ship. The appellee offered proof that it was ready, willing, and able to complete the contract on its part by furnishing the remainder of the material called for under the contract, and of the quality required by the contract.

In passing upon the ruling on the motion for a directed verdict, we must construe the evidence in the light most favorable to the appellee; and so construing the evidence, we are of the opinion that the appellee furnished sufficient evidence to carry to the jury its contention that the architects did approve of the material that was manufactured and furnished by the appellee, except as to the parts which were rejected from time to time, and which were remanufactured and furnished, and that the general rejection of the entire product by the architects was made after the material had been so furnished and approved by the architects, and part of it used in the building.

In this state of the record, the question of law for our consideration is as to whether or not, after having once approved of the material furnished, the architects could subsequently reject all of the material which had been so furnished, and which had

been approved by them, and bind the appellee by such rejection, even under the terms of the principal contract.

It is not uncommon to provide, in building and construction contracts, that an architect or engineer shall pass upon the quality of materials furnished, and shall have power to reject the same. If it be conceded that, under the contracts and the plans and specifications in this case, the architects were clothed with such power, and did reject the material, the legal question arises as to whether or not such power of rejection can be exercised after the architects have approved of the material. In contracts of this kind, the architect is, in a very proper sense, an arbitrator. The parties may bind themselves that his decision shall be final; and when not induced by fraud or bad faith or mistake, it is deemed final and conclusive, when made. The general rule is that, when the architect or other arbitrator has exercised his authority and made a finding, he cannot subsequently reverse his decision and make a different finding. The rule is well stated by the late Judge Sanborn in *City of St. Charles v. Stookey*, 85 C. C. A. 494 (154 Fed. 772), as follows:

''The power of an arbiter is gone after his final decision, and he may not subsequently modify, revoke, or annul it, or make a new award upon the same issues.''

In *Flannery v. Sahagian*, 134 N. Y. 85 (31 N. E. 319), it is said:

''As soon as they have made and delivered their award, they became *functus officio*, and their power is at an end. After having once fully exercised their judgment upon the facts submitted to them, and reached a conclusion which they have incorporated into their award, they are not at liberty at another and subsequent time to exercise a fresh judgment on the case and alter their award.''

In *Edmundson v. Wilson*, 108 Ala. 118 (19 So. 367), it is said:

''* * * it is well settled that, when an arbitrator or referee has made his award or report as a completed instrument, he has exhausted his authority, his power is at an end, and he is *functus officio*.''

In Morse on Arbitration and Award 226, the rule is thus stated:

"When the arbitrator or referee has made, or, as it is said in some cases, has made and published, his award or report, as a completed instrument, his power is wholly at an end. He has exhausted his authority. He is thoroughly *functus officio.* He can do nothing more in reference to the arbitration or the subject-matter. He cannot reopen the case, nor make a new or supplemental award or report, nor alter or amend the award or report already made, nor file additional, explanatory, alterative, or amendatory documents. What he has done must stand or fall, without further aid or assistance from him. He can neither support nor impeach it."

In *Jones v. Gilchrist* (Tex. Civ. App.), 27 S. W. 890, the court considered a case where material was furnished under a contract that the kind and quality of the material to be used in the work should be subject to the inspection, tests, and approval of the engineer. The court held that, after having approved the material in advance, the engineer could not withdraw such approval. See, also, *Laycock v. Moon,* 97 Wis. 59 (72 N. W. 372) ; *Siebert v. Roth,* 118 Wis. 250 (95 N. W. 118) ; *Laycock v. Parker,* 103 Wis. 161 (79 N. W. 327) ; *Vermont Street M. E. Church v. Brose,* 104 Ill. 206; *Lauman v. Clark & Bosquit,* 73 Ill. App. 659; *Ashland Lime, Salt & Cem. Co. v. Shores,* 105 Wis. 122 (81 N. W. 136).

The principal contract called for the construction of a building in which the manufactured trim stone "granette" should be used. It was *this* material that appellee agreed to furnish, and the record shows that the appellee furnished this kind of material, under its contract with the appellant. The evidence tended to show that the architects accepted the material so furnished, after inspection of the same. The jury could have so found. A portion of it was placed in the building. Thereafter, the entire scheme and plan for the construction of the building, so far as this material was concerned, was changed, and by an arrangement between the appellant and the school district, an entirely new material, to wit, Bedford stone, was substituted, and compensation made to the appellant for the change. The architect gave the appellant a formal notice of the rejection of the mate-

rial that had been furnished by the appellee, and ordered its removal from the building and grounds. The appellant in turn notified the appellee of such rejection. Under the evidence, the jury might have found that the material furnished by the appellee was all of the kind and quality called for in the contract and in the plans and specifications, and that it was inspected, approved, and accepted by the architects. If the jury found this to be true, the architects could not thereafter, under the terms and provisions of the principal contract, arbitrarily reject the material, even though a change had been made in the principal contract, and an entirely new material had been agreed upon between appellant and the school district.

It would be a harsh and unreasonable construction to place upon such a contract to hold that under it the architects could accept all of the material furnished by appellee and thereafter summarily reject it, and by so doing absolve the appellant from liability to appellee to pay for the material furnished. Such is not the law. We hold that appellee made a case for the jury, and that the court did not err in overruling the appellant's motion for a directed verdict.

III. Certain instructions are challenged. It is contended that the court erred in the statement of the issues, and that said statement is, in effect, a copy of the pleadings in the case. The  statement of the issues is too extensive and prolix, and comes dangerously near to being a restatement of the pleadings. It includes matters that might properly have been omitted. The practice of copying the pleadings in stating the issues has been repeatedly condemned by this court. *Veith v. Cassidy,* 201 Iowa 376, and cases cited. If the challenged instruction were a mere copy of the pleadings, we would be disposed to reverse because of the statement of the issues in that form; but the pleadings are long and somewhat involved, and the court, in stating the essential issues, did not commit reversible error in failing to abbreviate more than was done. The court, after the preliminary statement as to the issues, proceeded to instruct the jury as to the specific questions which the jury must determine. Considering the instructions as a whole, as we must do, we do not think there was prejudicial error in the manner of the statement of

34

the issues in the case, as set forth in the instruction of which appellant makes complaint.

IV. It is contended that the court erred in embodying in the general statement of the issues certain matters which were not in dispute, such as the corporate existence of the appellee, the execution of the contract, and other similar matters. This should have been avoided, but there was no prejudicial error in the instruction as given.

V. Complaint is made that the court failed to instruct the jury that it must consider the contract between these parties, and the plans and specifications, and the principal contract between  the appellant and the school district, and must read the same together, for the purpose of determining the rights and obligations of the respective parties. No instruction was asked, covering this subject-matter. The court did tell the jury that, in determining whether the plaintiff could recover, the jury should take into consideration the requirements of the contract between the parties, and the plans and specifications, and whether or not the material was approved by the architects, and in a separate instruction instructed the jury with regard to the general contract between the appellee and the school district, and the custom pleaded by appellant, and told the jury that, if said contract was a part of the contract between appellant and appellee, then appellee could not recover. The appellant is not in a position to complain of the instructions as given at this point.

VI. Complaint is made of a statement in one of the instructions to the effect that the appellee might recover if it showed itself ready, willing, and able to fulfill the terms of the contract  and to replace the rejected material with material which "would" meet the requirements of the contract and the plans and specifications, and "would" meet the approval of the architects. The court properly placed the burden upon the appellee to establish by a preponderance of the evidence that the material furnished by the appellee was of the kind and quality called for by the plans and specifications and the contract, and that the appellee was in a position to furnish for replacement material of such kind and quality as was called for, and as would meet with the approval of the architects. The appellant cannot complain

of the burden placed upon the appellee by this instruction. We do not think there was error at this point.

VII. Complaint is made by the appellant of the instruction given by the court with regard to the custom pleaded by the appellant to the effect that by custom the principal contract was regarded as a part of the contract between a sub-contractor and the principal contractor. The court told the jury that, if the appellant had proven such a custom as was pleaded by it, and that the appellee had knowledge of the terms of the principal contract, appellee would be bound by the action of the architects in rejecting the stone, even though the same had been approved by the architects prior thereto, and that in such event the appellee could not recover. The appellant asked no instruction along this line, and the one given by the court was not prejudicial to appellant.

VIII. Complaint is made of the action of the trial court in receiving evidence in regard to the quality of the material furnished by the appellee. The appellant contends that the question of the quality of appellee's product was not an issue in the case. Appellant predicated its defense on the ground that the architects had an absolute right to reject the material furnished by the appellee, and that, the architects having finally done so, their decision determined appellee's rights in the matter, regardless of the character or quality of the product furnished by the appellee. It was, however, incumbent upon the appellee, in order to make out its case, to establish a compliance with the terms of the contract on its part, and there was no error of which the appellant can complain because of the fact that the appellee attempted to show compliance with the contract by proving the character and quality of the product which it produced and furnished under the contract.

IX. Appellant complains of various rulings of the court on the admissibility of evidence with regard to "inspections" by representatives of the architects, and as to what took place at appellee's factory, and also at Council Bluffs. Appellee was entitled to show what took place. We find no error in these rulings that would justify interference on our part.

X. Complaint is made of the admissibility of certain evi-

dence offered by the appellee on the question of the custom pleaded by appellant. This evidence was admissible, and we fail to find any error in the rulings complained of in this regard.

The case presented essentially a fact question for the determination of the jury. We find no error of law that would justify a reversal of the judgment of the trial court, and it is—
*Affirmed.*

DE GRAFF, ALBERT, MORLING, KINDIG, and WAGNER, JJ., concur.

STEVENS, C. J., and EVANS, J., not participating.