CORSE, Respondent, vs. LINKE and husband, Appellants.

*November 14—December 5, 1911.*

*Building contracts: Construction: Conditions precedent or independent covenants? "Liens and claims:" Refusal of final certificate: Fraud: Substantial performance: Changes: Extension of time for completion.*

1. The specifications accompanying a building contract required the contractor to give certain written guaranties, with bond, as to the roofing and cement work, but the contract itself provided only for the furnishing of materials and doing the work as specified, for completion of the structure within the time designated and to the satisfaction of the superintendent, and for payments, from time to time and upon final settlement, without any reference to or dependence upon the prior giving of such guaranties. The owner made no demand for the guaranties as a condition of final payment, and the superintendent did not base his refusal to issue his final certificate upon the contractor's failure to furnish them. *Held,* that said provisions in the specifications were independent covenants, and the giving of the guaranties was not a condition precedent to the contractor's right to maintain an action for the amount due on the contract.

2. A provision in a building contract that the structure shall be turned over "free and clear of all liens and claims for materials furnished and work and labor done, or otherwise, arising . . . in favor of any subcontractor, materialman, workman, or laborer," calls only for freedom from all liens and from all claims which might become liens on the property.

3. Evidence sustaining findings by a referee that a contractor had substantially completed the building, that the owner accepted and occupied it before suit, but refused to pay more than $424.16, though $1,794.75 was due, and that the superintendent neglected and refused to ascertain and allow the deductions to which the owner was entitled and the amount due the contractor for extras, sustains the conclusion that such superintendent arbitrarily and unlawfully refused to perform his duty as a disinterested arbitrator between the parties and to issue a final certificate of substantial performance, and that such certificate was withheld by him to hinder, defraud, and delay the contractor in recovering what was due him.

4. Deviations from the specifications of a building contract, which were approved by the owner's superintendent in charge of the work and afterwards accepted by the parties in negotiations which resulted in a supplementary contract providing, among other things, for a new superintendent, cannot subsequently be made the basis of a claim of nonperformance.

5. Omissions amounting to $31.25 in a building, the total contract price of which was $11,400, are too insignificant to furnish a basis for a claim of want of substantial performance.

6. Where changes in a building are ordered by the superintendent, which necessarily delay the work, this necessarily extends the time limited for completion of the building.

APPEAL from a judgment of the circuit court for Racine county: MARTIN L. LUECK, Judge. *Affirmed.*

This is an action to recover the balance alleged to be due on the contract price and the amount claimed for extras for the construction of a two-story, four-flat building erected by the plaintiff on a lot belonging to the defendants in Racine, Wisconsin. The plaintiff seeks to have adjudged and to foreclose a mechanic's lien on the lot on which the building has been erected, which belongs to the defendant *Mrs. Caroline Linke.*

In February, 1907, John L. Koster, an architect at Chicago, at defendants' request prepared plans and specifications for the building in question. A contract, drawn up by the plaintiff, was executed on April 8, 1907, and plaintiff started work under it on April 10th. Under it the plaintiff agreed to erect and complete the building on or about August 15, 1907, for $11,400, to be paid as the work progressed, less fifteen per cent. to be withheld until sixty days after completion and acceptance. Work proceeded under the contract under the supervision of one Frank Bernatski until the early part of August, the defendant *Paul Linke* coming from Chicago at least twice a week during this period and visiting and inspecting the building. Bernatski, a brother-in-law of the defendant *Mrs. Linke,* was plaintiff's foreman. Upon the

trial of the action the plaintiff produced evidence to the effect that Bernatski had been designated by the defendant *Paul Linke* as his representative and as superintendent of construction of the building. It also appeared that Bernatski in fact reported to the defendants on the construction during its progress and that the defendants accepted such agency and acted thereon in dealing with the plaintiff.

During the period when Bernatski had charge of the construction a number of departures from the plans and specifications were made; one water supply pipe, two inches in the footing course, "I" beams in the dining rooms, flue linings, and some deafening paper were omitted from the construction, and some revents and fillings and bridging inferior to that called for in the specifications were installed. Bernatski testified that these departures from the specifications were noticed by *Mr. Linke* during his visits to the building, that he consented to retain them, and that it was agreed between them that the defendant in settling for the building should be allowed for these items. There was evidence that the specifications called for the installation of closets with high tanks and that the roughing-in had been done for high tanks while Bernatski was in charge of the construction of the building, that the defendants' architect, Koster,—superintendent under the second contract, signed August 14, 1907,— insisted on low-tank closets, and that there was some expense and also considerable delay connected with the making of the change. There was evidence that the specifications as originally drawn gave an incorrect measurement for the sinks to be used, that the error was not corrected until after the contract had been made, and that the manufacturing concern furnishing the plumbing fixtures was ordered to ship the fixtures for the defendants' building, without other specification, and that the shipment was made up from the incorrect copy of the specifications which had been furnished this concern.

About August 9, 1907, when the building was about sev-

enty-five per cent. completed, work upon it was stopped by the plaintiff because the defendant *Paul Linke* refused to make a payment then due. The defendant claims that his refusal was based on his knowledge of the fact that the plaintiff had not paid what was due one of the subcontractors and his desire to protect himself in case a lien should be filed against the building. About ten days later work was resumed, the plaintiff meanwhile having received the payment demanded and having given a bond for the completion of the building, and the parties to the original contract having made an agreement providing that the architect should become superintendent of the construction of the building, should have power to fix the amounts to be received by the plaintiff upon his various claims, and should also make the deductions for his omissions. It was also agreed that the period for the completion of the building should be extended to September 15, 1907. Upon becoming superintendent the architect required some changes to be made in the fittings of the building, the most important of which were changes in plumbing fixtures. There is evidence that these changes delayed the completion of the building about a month.

The plaintiff produced evidence to the effect that the building was completed on October 13, 1907, with the exception of insignificant items which were brought to his attention by the architect at various times thereafter and which he claims to have remedied immediately.

Upon completing the building the plaintiff demanded a settlement. The architect and the defendant *Paul Linke* visited the building at various times and the architect sent letters to the plaintiff in which he specified defects and omissions in the completion of the building according to the specifications. He did not make any decision on the plaintiff's claims or, as provided by the August agreement, determine the deductions to be made from the contract price for omissions or defects in the construction. Nor did he issue to the

plaintiff a final certificate, although it was demanded several times.

It is admitted that extras to the amount of $112 were ordered, making the total amount due the plaintiff under the contract and for these extras $11,512.    The plaintiff has received $8,500 and has issued an order upon the defendant *Paul Linke* for the sum of $1,030.    The defendant paid $900 on this order and before the trial had been concluded had paid the balance.    At a meeting in Chicago in January, 1908, the plaintiff, the architect, and the defendant *Paul* *Linke* being present, the defendant and the architect attempted to get the plaintiff to settle the total balance due him for $424.16, claiming offsets for the balance.    This offer was refused by the plaintiff and a few days later this action was brought.

A demurrer to the complaint was overruled.    The answer pleads a counterclaim, which will be more particularly noticed hereafter in connection with the referee's report.    The referee to whom the action was referred reported a substantial performance of the contract, allowed certain extras to the plaintiff and some items of defendants' counterclaim, and found that the plaintiff was entitled to judgment for the resulting balance.    After the evidence was all in, an amendment to the answer was allowed which set up as a defense the fact that the plaintiff had not given the guaranties provided for in the specifications for the maintenance of the roofing and certain cement work for a period of ten years.

The referee reported as follows: The total contract price by agreement was $11,512; the failure of the architect to perform his duties as required by the contract was ground for the disallowance of the defendants' claim for his extra services as superintendent; the delay in completing the building was the fault of the defendant *Paul Linke* and the architect, and the defendants' claim for loss of rent should therefore be disallowed; the claim for omission of iron grates,

installing inferior wire fences, installing inferior joists and inferior screens was disallowed on the ground that there was evidence to show that these articles were furnished in accordance with the plans and specifications; and the item for foot bolts for doors was disallowed on the ground that the evidence showed that these had never been furnished to the plaintiff by the defendant.

The referee reported in favor of allowing the defendants for the following items: Omitting one water supply, one gas outlet in four kitchens, glass in door, two inches from footing course, "I" beams, flue linings, and one key, and installing inferior revents and fillings, inferior house numbers, inferior bridging and inferior door jambs, amounting to $229.25. It is not necessary to refer to the evidence against the allowance of some of these items for the reason that no question arises here as to them.

The referee allowed the plaintiff the following as extras: Painting four consoles, $32; 130 feet of concrete foundation (according to the evidence of the plaintiff the depth of the basement was increased on the order of the defendant *Paul Linke*), $50; extra depth in basement, $50; extra cement sidewalk, $4; extra hinges on doors,- $20; and extra work in changing closets, $32,—total, $188.

A claim of $8 by plaintiff for surveying the lot was disallowed, and a charge of $130 for putting on extra plaster was disallowed on the ground that this work was necessary to comply with the specifications.

Upon this state of the transaction the referee considered that the plaintiff had substantially performed the contract on October 13, 1907, that the delay in completing it on time was due to the defects in the plans and specifications and owing to the changes directed by the superintendent and the defendant *Paul Linke*. He also reported that the lien against the property which had been filed by one of the subcontractors was invalid and that its filing constituted no defense to the

action, and that the plaintiff was entitled to judgment for the balance due him, for the foreclosure of a mechanic's lien, and the sale of the premises to satisfy the judgment.

The report of the referee was modified by the court by allowing the defendants an additional credit of $30. It appears that the defendant *Paul Linke* had paid an order for $1,030 on him by the plaintiff, but that the referee's report allowed only $1,000 as a credit to the defendants. As so modified the report of the referee was approved, and judgment for $1,794.75 and costs and for the foreclosure of the mechanic's lien and the sale of the premises was ordered. This is an appeal from the judgment.

For the appellants there was a brief by *Thomas P. Hardy,* attorney, and *Frederick A. Freeark,* of counsel, and oral argument by *Mr. Freeark.*

For the respondent there was a brief by *Thompson & Harvey,* attorneys, and *William D. Thompson,* of counsel, and oral argument by *Mr. ,W. D. Thompson* and *Mr. Fulton Thompson.*

SIEBECKER, J.  The appellants assail the judgment upon numerous grounds and contend that the facts of the case as found by the referee are against the clear preponderance of the evidence.

The contention of the appellants first in order is to the effect that the plaintiff has failed to perform some of the express conditions of the contract which are in the nature of conditions precedent to be performed by him before he can institute an action to enforce any claim under the contract. The argument is made that the plaintiff is in default in failing to furnish the defendants a written undertaking as to the roofing and the cement work and in failing to give a bond as stipulated to guarantee such work for ten years; that he failed before commencing action to clear the building and premises of all claims and liens for material furnished and

labor performed in the erection of the building by subcontractors, materialmen, and laborers; and that he did not produce the written certificate of the architect and superintendent named in the contract, which was to be given only when the plaintiff had fully executed the contract and finished the completed structure "to the full and complete satisfaction of said John L. Koster, architect and superintendent." Proceeding to the consideration of these claims in the order above stated, the first inquiry is: Does the contract provide, as a condition to the institution of an action by the plaintiff to enforce any of its provisions, that the plaintiff should furnish an undertaking and bond guaranteeing the cement work for floors, walks, etc., for the period of ten years, and that a written guaranty for the same period as to the roofing should be given before the final certificate was to be issued? These requirements are not specifically mentioned or embraced in the contract. The contract provides only for the furnishing of the materials as specified, for executing the work as outlined and specified, and completing the structure within the time designated and to the satisfaction of the superintendent, Mr. Koster. We must resort to the specifications to ascertain the significance of these obligations. In the written contract we find nothing expressly stipulated to indicate that the parties had an intention to make the performance of these obligations of guaranteeing the work for the future a condition upon which payment for the material furnished and the work and labor performed was to be made. Payment by the owner for such material and labor is expressly stipulated for by the parties without any reference to or dependence upon the prior giving of such guaranties. This is the fact not only as to the final payment but also as to the payments of the instalments of the contract price. The record also shows that the parties so treated the matter in their dealings. The plaintiff procured no written guaranties and the defendants made no objection on account thereof; nor did they demand

that they be furnished before final payment for the construction of the building as agreed. Neither did the defendants insist thereon by way of defense in this action until after the specifications had been received in evidence on the trial and after the plaintiff had tendered the guaranties. Under these circumstances it is clear that the parties intended these obligations to be independent covenants and separate from the agreements requiring the plaintiff to furnish the material and labor and to complete the building within the time limit and imposing on the defendants the obligation to pay the amount stipulated. The defendants' superintendent at no time predicated his refusal to issue his certificate for the amount due the plaintiff under the contract upon plaintiff's failure to furnish these written guaranties. This clearly negatives the claim that the defendants stood on such a right. Under these circumstances the plaintiff had a right to institute an action for the recovery of the amount due him for the material and labor furnished in constructing the building without first furnishing these written guaranties.

It is further contended that the action was prematurely brought because the plaintiff failed to turn over the structure "free and clear of all liens and claims for materials furnished and work and labor done, or otherwise, arising from the erection, completion, and finishing of said building, in favor of any subcontractor, materialman, workman, or laborer." It is suggested that the structure was not turned over to defendants free and clear of all such liens and claims, though it appeared that no demand, in the nature of a lien, for materials or labor by subcontractors, that could be enforced against the premises, existed in law, and that this agreement meant that, regardless of any right of a subcontractor to enforce a lien against the premises, the plaintiff was to pay such claims before he was entitled to recover his compensation. This contention rests upon an unnatural and strained meaning of the context of this stipulation. We are persuaded that the par-

ties used the terms in their common and ordinary sense, that they were correctly interpreted by the trial court and referee, and that they are sustained in the conclusion that the building was free and clear from all such "liens and claims" when it was turned over to the defendants.

The referee found upon the evidence adduced that the architect and superintendent arbitrarily and unlawfully refused to perform his duty as a disinterested arbitrator between the parties regarding disputes arising under the contract and to issue a final certificate showing that the plaintiff had substantially completed the building called for by the contract and was entitled to the balance justly due thereon, and that such certificate was withheld by him to hinder, defraud, and delay the plaintiff in recovering what was due him under the contract. The court's conclusion upon this subject rests mainly upon the findings of fact that the plaintiff had substantially completed the building by October 13, 1907, that the defendants accepted and occupied it before suit was instituted, that before the commencement of the action the defendants declined to pay any balance due the plaintiff in excess of the sum of $424.16, and that the arbitrator and superintendent neglected and refused to ascertain and allow the amount the defendants *Linke* were entitled to as deductions for the items wherein there were departures from the contract and the amount of the items for which the plaintiff was entitled to recover as extras. If the record sustains the court in its affirmance of the referee's report upon these various issues between the parties, then the conclusion that the superintendent was guilty of defaults and omissions in the discharge of his obligations is abundantly sustained in the record. It is manifest that in such a state of the transaction the plaintiff was entitled to have the differences between the parties to the contract adjusted and to have a final certificate issued to him for the balance justly due him within a reasonable time after October 13, 1907, the date it is found that

the building was substantially completed, and that a neglect and refusal to do these things operated to the wrong of the plaintiff. *Laycock v. Moon,* 97 Wis. 59, 72 N. W. 372; *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327; *Ashland L., S. & C. Co. v. Shores,* 105 Wis. 122, 81 N. W. 136. A detailed examination of the evidence upon these issues has convinced us that the referee's findings, as approved by the trial court, are not against the clear preponderance of the evidence.

Appellants vigorously assail the finding that the building was substantially completed on October 13, 1907, and aver that there were many important omissions from the specifications in materials used and essentials in design. The items specified under this contention were, however, proven to have been approved by Bernatski as defendants' superintendent, and by mutual agreement were accepted by the parties in the negotiations which resulted in the contract of August 14, 1907 (dated April 8, 1907), and they cannot now be made the basis for a claim of nonperformance. Other items in this class which the defendants claim are departures from the specifications are too insignificant to furnish a basis for a claim of want of substantial performance. The referee allowed the defendants $31.25 for these items.

The claim that the plaintiff is shown to have made no effort in good faith at performance of the contract is wholly unfounded in fact. The evidence tends to show that he made all reasonable efforts to carry out his part of the agreement, and that any want of compliance on his part was due to unavoidable conditions incident to the erection of such a structure and to delays occasioned by changes in the plumbing. Hence, the court properly held him free from default in carrying out the contract in good faith.

The argument is made that Bernatski was not selected by the defendant *Paul Linke* to represent him in the construction before the second contract was made in August. This, however, must fail because the plaintiff and Bernatski testify

positively to this fact, and they also testify that he in fact so acted while *Mr. Linke* was present and at his direction.

The contention that the court's findings to the effect that the plaintiff was excused from completing the building within the time fixed by the contract, namely, September 15, 1907, is against the evidence, cannot prevail, for it appears that the superintendent ordered changes in the plumbing in the building that in fact caused a delay of several weeks and necessarily extended the time for completing the building beyond September 15, 1907. It also appears that the plaintiff made all reasonable effort to expedite the work incident to such changes.

Other exceptions to the court's findings have been examined and we find the evidence satisfactorily sustains such findings. It can serve no useful purpose to make a detailed reference thereto. We are satisfied that the referee made just allowances to the defendants for all deviations and omissions from the plans and specifications, that the plaintiff was entitled to the amount found for extras, and that he was entitled to judgment for the balance awarded him.

We find no reversible error, and the judgment must stand.

*By the Court.*—Judgment affirmed.